BARON, Respondent, v. BARON, Appellant

(28 N. W.2d 836)

(File No. 8923. Opinion filed September 23, 1947.)

**Meyer M. Willner** and **Jerry Giesler,** both of Los Angeles, and **Tom Kirby,** of Sioux Falls, for defendant and Appellant.

**Morgan & Fuller,** of Mitchell, and **Bailey, Voorhees, Woods & Fuller** and **Davenport, Evans & Hurwitz,** all of Sioux Falls, for plaintiff and Respondent.

SMITH, J.   The decree grants a divorce to the plaintiff husband on the ground of extreme cruelty, and divides the property of the parties.   The principal complaint of the defendant wife on appeal is that the property division is inequitable.

In granting a divorce for the fault of a husband a court has power under SDC 14.0726 to make allowance to

the wife in lieu of the common-law duty of the husband to support her. Cf. Tuttle v. Tuttle, 26 S. D. 545, 128 N. W. 695. Because the divorce was granted for the fault of the wife, that power is not invoked. The decree below must be tested under a separate provision of SDC 14.0726 reading as follows:

"Where a divorce is granted for an offense of either husband or wife, the courts shall in such action have full power to make an equitable division of the property belonging to either or both, whether the title to such property is in the name of the husband or the wife. In making such division of the property the court shall have regard for equity and the circumstances of the parties. "

This statute does not clothe a court with arbitrary power to award the property of one of the parties to a divorce to the other. It was adopted in recognition of the fact that one spouse often holds title to property of the other, that property possessed by either party to a marriage is frequently the result of their joint efforts, and that many factors must be taken into consideration if complete justice is to be done in dissolving a marital partnership. It invests a court with a broad underlying power to enforce the equitable claims to property of both of the parties to a divorce. In considering this power in a case where the wife was granted a divorce for the fault of the husband, in Caldwell v. Caldwell, 58 S. D. 472, 237 N. W. 568, 569, it was written:

"This statute is comprehensive in its terms. It does not prescribe the proportion to be allotted to each of the parties, but provides that there shall be an 'equitable division.' What may constitute such a division is necessarily dependent upon the facts, circumstances, and conditions in each particular action, and no fixed rule for an 'equitable division' can be stated. Among the matters to be considered in making a division of property under this statute is the value of the estate; the manner in which the property was acquired; the ages of the parties, their health and competency to earn; and the cause for which the divorce was granted."

In broad outline the record discloses the following facts and circumstances. At the time of the marriage of these parties in 1921, the husband was associated with two of his brothers in three mercantile businesses in South Dakota. His interest in these stores, his home at Mitchell, and some miscellaneous property was then of a value of approximately $111,000. The wife had been a saleslady in one of these stores and was without property at the time of the marriage. During the course of the marriage the husband and his brothers prospered. Shortly after 1921 they disposed of two of the South Dakota stores and acquired one of the principal mercantile establishments in Madison, Wisconsin. They also organized a corporation which acquired several valuable business buildings in Mitchell, the largest office building in Sioux Falls, a well-stocked cattle ranch, and other property. At an early date the Mitchell store and the real estate corporation were placed in charge of a manager, and a fourth man was associated in the Madison store and charged with its management. Prior to 1930 the brothers had moved to California. During that year the husband completed a twenty-room home in an exclusive district of Los Angeles at a cost of about $65,000. In an attempt to improve their income tax position, the husband transferred one-half of his interest in the Mitchell and Madison stores to the wife. This was done by accepting her notes for the book value of the interest she received in each store. These notes have since been discharged by profits from the stores. Other profits from the stores have been transferred to the real estate corporation and have there accumulated in a credit to the wife of $22,000. A share in the profits of these stores was never actually paid to the wife. The court found that, subject to a contingent tax liability to the federal government of about $47,000, the net worth of the property standing in the name of both parties at the time of trial was approximately $436,000. Before taxes the family income for 1945 was about $73,000. Based principally on income tax returns for a series of years before the trial the wife asserts the net worth of their property to be about one million dollars.

In addition to the above described property, the brothers owned a cosmetic business in California which produced an annual profit of about $6,000 to each brother. The husband claims to have transferred his stock in this corporation to his daughter as a wedding present. The wife complains because the trial court failed to include this property in estimating the net worth of the parties.

It is undisputed that all of this wealth arose from the operations of the brothers and that the wife made no direct contribution to the success of their ventures. She was utterly isolated from the businesses and from their policies and problems. To what extent the husband was directly responsible for the success of the brothers does not appear. During most of the married life of the parties, he lived as a retired gentleman except for annual or semi-annual business trips east.

Both parties had been married before. She had no children and he had an infant daughter at the time of their marriage. A boy and a girl resulted from their marriage. The boy was twenty and the girl fifteen at the time of the trial. The husband's daughter grew to womanhood under the belief that the wife was her mother. It is established that the wife was industrious and capable. She gave unstintingly of her energies in caring for the children and the home. For example, during the last years of the marriage, when help at reasonable wages was not available, she operated the twenty-room home without regular help and even did the personal laundry of the family. Although the annual expenses of the family averaged somewhat over $6,000, it can fairly be said that the industry and economical management of the wife conserved some of the husband's wealth.

Upon conflicting evidence, which need not be set forth, the trial court found the wife guilty of extreme cruelty and granted a divorce to the husband. The fifteen-year-old daughter was placed in the custody of the wife and the boy was placed with the husband. The wife was awarded $100,000 in cash, the linen, silver, glassware, and bedding in the home, one automobile, her small personal bank ac-

counts, jewelry, furs, etc.; all other property owned by the parties was awarded to the husband.

The contention that the property division is inequitable is placed upon the ground that the court erred in estimating the value of the property acquired subsequent to the marriage; and that during this marriage of a quarter of a century the wife indirectly has contributed to the husband's business success by tirelessly devoting herself to the task of ministering to his comforts, in ordering his home, and in rearing not only the children of their marriage, but mothering the daughter of the husband's first marriage.

It cannot be said that the trial court failed to exercise a reasoned discretion. To be generous with the wife because of the husband's good fortune was not the privilege of the court. Its power was to respond to the wife's equitable claims to property. While $100,000 may not constitute a large fraction of the total wealth of the parties, as that wealth is valued by the wife, it is a very substantial sum. She came to the marriage empty-handed. The division provides her with a competency, notwithstanding the fact that the court deemed her guilty of having destroyed the marriage relation. We do not belittle her services to the husband, but we find it impossible to discover such a relation between those services and the profits of the businesses in Wisconsin and South Dakota as gave rise to a larger equitable claim than was recognized by the trial court. Although she worked faithfully and hard she lived in comparative luxury. In fact, as we view the history of the relations of the parties, we think the wife's strongest claim to such a substantial award arises from the voluntary transfer to her of an interest in the Mitchell and Madison stores. Considering the very evident purpose of that transfer, and of the fact that to have left the wife in a business association with the husband and his brothers would have but invited further trouble, we think the trial court wisely concluded to restore those interests to the husband. We also are of the opinion that the money award responds to all of the wife's equitable claims, including such claim as rises from that particular circumstance.

There remains the question of attorney fees below and on appeal, and of an allowance to the wife of temporary alimony on appeal. By appropriate assignment the wife questions the sufficiency of the attorney fees allowed below, and in orders heretofore entered, we have reserved decision on the matter of attorney fees on appeal and on the question of whether the temporary alimony on appeal allowed to the wife should be deducted from her share of the property division.

The allowance for attorney fees rests in the discretion of the trial court. SDC 14.0725. We do not fail to appreciate that the task of properly protecting the interests of the wife was complicated by both time and distance, as well as by the extreme values at stake. Neither have we overlooked the circumstance that the husband confronted the wife with a battery of three firms of experienced attorneys. Nevertheless, after a careful study of the whole record we have concluded that the trial court exercised a sound judicial discretion in fixing the amount of attorney fees and hence we are not at liberty to disturb that allowance.

The appeal was neither frivolous nor unjustified. We are satisfied that it was taken in perfectly good faith. Because of the unusual circumstances, the amounts involved, and the several side issues presented on order to show cause in connection therewith, our judgment will be that the wife be allowed $3,000 as attorney fees and $500 to cover her disbursements for a transcript and other expenses on appeal. Our judgment will further direct that the husband bear the temporary alimony hertofore ordered, and that no costs will be taxed to either party on this appeal.

Finding no error in the record, the judgment is affirmed.

All the Judges concur.