MARY L. COZIK v. JOSEPH J. COZIK,
ALSO KNOWN AS JOE COZIK.

155 N. W. (2d) 471.

January 5, 1968—No. 40,305.

*Danforth & Allen* and *E. A. Danforth,* for appellant.

*Pemberton, Michaels, Bishop, Seeger & Rosenblad* and *David T. Bishop,* for respondent.

KNUTSON, CHIEF JUSTICE.

This is an appeal from an order denying defendant's motion for amended findings of fact, conclusions of law, and order for judgment or in the alternative for a new trial.

The action involves one for divorce. Defendant was born in Czechoslovakia and came to this country at an early age. While serving in the Army he met plaintiff, who was then a USO hostess. After defendant left the Army, he married plaintiff. They went to Rochester, Minnesota, to visit defendant's mother and decided to remain there. At the time of the marriage plaintiff had about $500 and defendant about $4,000. They both went to work, she as a waitress in various restaurants and he as a plumber. Later, defendant established his own plumbing business.

Four children were born of the marriage, namely, Veronica, born September 19, 1948; Joseph John, Jr., born May 19, 1950; Deborah, born August 27, 1951; and Martin, born July 20, 1953.

Between the births of these children plaintiff continued to work intermittently as a waitress. The income tax returns of the parties show that from 1950 through 1964 defendant earned as a plumber or in the plumbing business the sum of $68,471. For the same period the returns show that plaintiff earned $2,650 as a waitress, but, as the trial judge

indicated in his findings, this was exclusive of tips, which were not shown on the tax returns.

Plaintiff helped defendant in the plumbing business by keeping his books, answering calls, making out checks for material, and in other ways.

In the early fifties defendant acquired a vacant lot and in his spare time built a house on it which has served as the family homestead. The family lived in the basement until the house was completed. It contains an apartment on the basement level which for some time has been rented for $125 per month and is still so rented. The house was built largely by defendant. Even plaintiff admits that he worked hard, using all of his spare time in completing it. The court found that the house now has a value of $34,000, which is about midway between plaintiff's and defendant's estimates of its worth. It is free of encumbrances, never having been mortgaged.

Sometime after the house was built the parties acquired another piece of property on which they built a motel. Here again much of the work was done by defendant, although it appears that a contractor did substantial carpentry work. Plaintiff helped out by doing some sanding and cleaning up and other incidental work of that kind. When the motel was completed, they rented it. Defendant contends that his mother operated the motel, but there is evidence that plaintiff helped by renting rooms and looking after the motel when the mother was not there. In 1962 the motel was sold for $110,000, which represented a profit on the parties' investment in it of some $53,000. The proceeds of the sale of the motel were put in a savings account in the joint names of the two parties.

Aside from the homestead and this savings account, which at the time of the divorce amounted to $92,300, the parties owned a vacant lot valued at about $5,000; some Investors Mutual stock worth about $6,000; an insurance policy having a cash value of about $2,000; furniture and household goods worth about $3,000; and two automobiles. While there is disagreement as to the value of individual items of the property owned by them, the parties agreed that the aggregate value of the property at the time of the divorce was $150,000.

Plaintiff sued defendant for divorce in July 1964, alleging cruel and inhuman treatment. Defendant interposed a countersuit, which he later withdrew with the understanding that such withdrawal would not prejudice his rights as to other issues to be litigated. Thereupon plaintiff was permitted to procure a divorce by default.

On July 6, 1964, plaintiff made application for temporary alimony and child support. The court granted this motion on July 20, giving plaintiff custody of the children and awarding her $250 per month temporary alimony and an equal amount for temporary child support. Pursuant to stipulation of the parties this order was vacated and a new order issued September 16, 1964, which required defendant to pay $125 per month temporary alimony and $200 per month temporary child support. The order of September 16 permitted defendant to withdraw $27,000 from the savings account, which had been impounded, but required him to pay plaintiff $7,000 of this, of which $1,000 was for temporary alimony and child support due under the July order.

Defendant having defaulted in making the required payments, on March 3, 1965, plaintiff moved to compel him to make them. The court heard this motion on March 5 and reaffirmed the September 16 order in so far as it pertained to alimony and support. After this hearing defendant apparently made the payments required through March 1965, but he again defaulted in subsequent months.

Trial of the divorce action was commenced on August 24, 1965, defendant contesting only the division of property and the custody of the children. On November 3, 1965, the court issued its findings and conclusions and order for judgment. It awarded plaintiff custody of the children and granted defendant rights of visitation. Defendant was required to pay $200 per month for the children's support. He preferred to pay alimony in a lump sum. The court awarded plaintiff lump-sum alimony of $12,000, which was about midway between the amounts suggested by plaintiff and defendant. It awarded her the homestead, valued by the court at $34,000, and $42,320.01 of the joint savings account less the $6,000 previously withdrawn pursuant to the order mentioned above. It gave her the household goods, the mutual fund stock, some other items of property, and attorneys' fees in the sum of $3,500. Defendant was

given the balance of the property. The court made a later adjustment whereby defendant was given $3,000 on account of an error in the court's computation, so that the final adjustment left to plaintiff property valued at $88,056.81 and to defendant property worth about $62,880.

On November 9, 1965, defendant made a motion to eliminate nunc pro tunc and retroactive to April 1, 1965, all accrued temporary alimony payable under the order of September 16, 1964, and to eliminate certain of the payments for child support required by that order, due to the fact that one of the children had gone to work and was partially supporting herself and one of the other children had been cared for by defendant during part of the year. This motion was denied by the court on February 21, 1966, except for the adjustment in the sum of $3,000 given defendant due to the court's error in computation.

On November 5, 1965, a few days after the court's findings were entered in the divorce case, a hearing was held to determine whether defendant should be held in contempt for his failure to make the required alimony and support payments pending the trial of the case. At this hearing defendant endorsed a check to plaintiff which was in an amount sufficient to cover arrears in alimony and child support. In spite of this, on February 21, 1966, the court found defendant to be in contempt of court for failure to pay the alimony and support, but stayed imposition of sentence for a period not to exceed one year.

Defendant's appeal raises substantially three questions: (1) Did the court abuse its discretion in awarding plaintiff an excessive amount of the property of the parties? (2) Was it error to deny defendant's motion to amend nunc pro tunc the order relating to temporary alimony and child support? (3) Was it error to hold defendant in contempt of court after he had paid all arrears in temporary alimony and support?

The relevant statutory provisions are Minn. St. 518.58,[1] 518.59,[2] and 518.60.[3]

---

[1] § 518.58 reads: "Upon a divorce for any cause, or upon an annulment, the court may make such disposition of the property of the parties acquired during coverture as shall appear just and equitable, having regard to the nature and determination of the issues in the case, the amount of alimony

Prior to 1951 the amount of the husband's property which the court could award to a wife in a divorce was limited to an amount not exceeding one-third thereof. Minn. St. 1949, § 518.22. Other provisions provided for awarding to the wife her own property, alimony, etc. This statute was amended by L. 1951, c. 551. Section 5 of c. 551 contains the provision now found in Minn. St. 518.58, and we have frequently held that under this provision the court has a wide discretion in determining how much property should be awarded to the wife. We will not interfere with the exercise of such discretion if it is within reason.[4]

However, the broad discretion granted to the trial court under these statutory provisions is not without limitation. It is subject to review. Obviously, the court could not give to the wife all the property of the parties unless there was something unusual about the case. In this case nothing appears in the record that would indicate that either of the

---

or support money, if any, awarded in the judgment, the manner by which said property was acquired and the persons paying or supplying the consideration therefor, the charges or liens imposed thereon to secure payment of alimony or support money, and all the facts and circumstances of the case."

[2] § 518.59 reads: "Upon a divorce for any cause, the court may also award to the wife the household goods and furniture of the parties, whether or not the same was acquired during coverture, and may also order and decree to the wife such part of the real and personal estate of the husband not acquired during coverture, exclusive of future earnings and income, and not exceeding in present value one-half thereof, as it deems just and reasonable, having regard to the amount of property decreed to the wife under sections 518.56 and 518.58, the amount of alimony and support money awarded, if any, the character and situation of the parties, the nature and determination of the issues, and all other circumstances of the case."

[3] § 518.60 reads: "Upon a divorce for any cause, the court may also order and decree to the wife such alimony, not exceeding one-half of the husband's future earnings and income, as it deems just and reasonable, having regard for the circumstances as described in section 518.59, and may make the payment thereof a lien or charge upon any real or personal property of the husband."

[4] Krusemark v. Krusemark, 232 Minn. 416, 46 N. W. (2d) 647; Holmes v. Holmes, 255 Minn. 270, 96 N. W. (2d) 547; Ruprecht v. Ruprecht, 255 Minn. 80, 96 N. W. (2d) 14; Posselt v. Posselt, 271 Minn. 575, 136 N. W. (2d) 659; Cloutier v. Cloutier, 261 Minn. 324, 112 N. W. (2d) 347.

parties was guilty of any conduct for which he or she should be penalized. There is no claim of adultery, infidelity, or other serious misconduct. At the worst it seems that the parties, who at the time of the trial were both 44 years of age, simply tired of living with each other. While plaintiff was permitted to obtain her divorce by default on proof of cruel and inhuman treatment, it is quite likely that, had the case been contested, defendant could have put in proof of cruel and inhuman treatment on the part of plaintiff equal to that submitted by plaintiff. The property of these two people was accumulated by hard work on the part of both and apparently through a great deal of frugality. While plaintiff did not earn as much as defendant, due to the fact that her services did not command the same rate of pay, she did contribute all she was able to, consistent with raising a family and helping to take care of defendant's business. However, there appears to us to be no reason why plaintiff should be given such a substantially greater percentage of the property than defendant as she was.

Although it is usually useless to compare facts of different cases, particularly in the field of divorce, Cloutier v. Cloutier, 261 Minn. 324, 112 N. W. (2d) 347, comes closer to the facts of this case than any other we have been able to find. There, as here, husband and wife both worked faithfully and energetically in building a substantial estate. We held, somewhat reluctantly, that we would sustain the trial court's division giving substantially half of the property to each of the parties. While we are reluctant to interfere with the trial court's exercise of discretion in awarding property to a wife upon a divorce action, we do feel that in this case the trial court has gone too far in giving the wife so much of the property acquired by both. At the very most she should have no more than half of their accumulated property; and even that amount probably would be generous in view of the fact that most of the property was acquired by the husband's energetic work in building both a home and a motel and at the same time running a business. We do not gainsay the fact that the wife contributed all she could. If anything is to be said, it is that both are to be commended for their cooperative effort in building what became a quite substantial estate.

The court in its memorandum indicates that defendant has an earn-

ing power substantially greater than that of plaintiff. This may be true, but plaintiff is also able to work and earn a substantial income. Balancing the value of defendant's earning power against that of plaintiff does not answer the question. Due to his greater earning power he also contributed more toward acquisition of the property which the court has divided between them. Because of that earning power he may also be able to acquire more property in the future than plaintiff can; but if plaintiff is so inclined, she can undoubtedly earn a substantial part of her living expenses. In addition she has the income from rental of the apartment in the homestead, which at the time of trial was $125 per month. Her substantial lump-sum alimony, properly invested, should also bring her income. He will also have to support the children during their minority.

With respect to the motion to amend the order for temporary alimony and support money nunc pro tunc, about all we care to say is that the trial court could justifiably have granted this motion in part. After the order for temporary alimony was issued, plaintiff went back to work. She earned substantial sums, as did the daughter, Veronica. The daughter saved most of her earnings, to be used later for a college education. Thus, the situation was not the same at the time the court made the order as it was later. Temporary alimony granted under § 518.14 is intended to provide such amount as is "necessary * * * to support such spouse" during the pendency of the action. It would seem that the court could have taken into consideration the fact that after the order was made plaintiff went back to work. During the first three quarters of 1965 she earned $1,211.36. In view of these earnings she did not need as much from defendant as at the time the order was made. However, we do not think we should interfere with the trial court's denial of defendant's motion on this issue.

With respect to the finding of contempt, we think the court was in error. Contempt convictions in divorce matters are used largely to compel compliance with the court's order. Unless there has been an overt act which can be called contempt in itself, when the amounts in default are paid there is no longer any ground for a finding of contempt

because if there was one it has been purged by the payment. We think that defendant, by paying up all arrears prior to the issuance of a finding of contempt, eliminated any basis for such finding. The contempt order will therefore be set aside. Apparently the court intended to continue the matter for a year so as to use the finding of contempt to enforce future payments, but it cannot be so used. If a finding of contempt is to be made it must be based upon defaults existing at the time such finding is made.

There are a few other matters raised by defendant that should be briefly mentioned. It appears that defendant has contributed much time toward building two apartment buildings owned by his mother. While the court mentioned these buildings in its memorandum, it did not take the value of these apartments into consideration in making the division, even though it appears that defendant might have some interest in them. There is no proof that he has any ownership in these apartments, so all we need to say is that they should not be considered here in determining the division of property.

Defendant also contends that lump-sum alimony and attorneys' fees should be deducted from plaintiff's share in the division of the property. This position is not tenable. The lump-sum alimony is in lieu of monthly alimony. If alimony had been decreed on a monthly basis, obviously it would not be deducted from plaintiff's share of the property. The same is true of lump-sum alimony. Nonetheless, the amount of alimony is one of the elements to be considered in awarding property under § 518.58.

With respect to the attorneys' fees awarded, while we believe they are liberal, we are content to abide by the court's determination thereof. However, the fees allowed to plaintiff's attorneys are so liberal that no additional fees will be allowed here. Neither will costs or disbursements be allowed to either party.

It is therefore our determination that the case should be remanded to the trial court with instructions to amend the findings of fact, conclusions of law, order for judgment, and the judgment entered thereon so as to grant to plaintiff a division of the property in an amount not to

exceed one-half of the value thereof. It may be that the trial court will want to make some other determination as to what property plaintiff should have.

Affirmed in part; reversed in part.