FOSS, Plaintiff v. FOSS, Defendant

(163 N.W.2d 354)

(File Nos. 10508, 10490. Opinion filed December 17, 1968)

John E. Burke, Sioux Falls, for plaintiff.

T. R. Johnson and Dennis C. McFarland, of Danforth, Danforth & Johnson, Sioux Falls, for defendant.

MANSON, Circuit Judge.

The appeals[1] here joined for decision are taken from a decree of absolute divorce granted to June E. Foss on August 18,

---

1. Each party appealed only from a part of the judgment. Defendant's appeal was filed on September 29, 1967. Plaintiff's appeal was filed on December 12, 1967. The latter appeal is considered first because of the nature of the issue involved.

1967, in an action begun on August 26, 1965, by service of process upon the said June E. Foss, defendant therein, by the plaintiff, Joseph J. Foss. For convenience and clarity the parties are herein designated as they were in the trial court. The record fails to disclose an answer, but it would reasonably appear that the cause was thereafter tried on the general issue, evidence being submitted to the Hon. George A. Rice. On March 2, 1965, Judge Rice directed a memorandum decision to the contending parties, advising that he found the evidence insufficient to justify a decree for the plaintiff. This memorandum was never implemented by order or otherwise, but the plaintiff was apparently satisfied that his cause had failed since he admittedly stated to defendant that he would go to Nevada or Mexico to secure a divorce if he could not get one in South Dakota.

Whatever his motivation, it is clear that plaintiff thereafter took voluntary steps to abandon his South Dakota residence and domicile and to acquire such in Nevada, where, on August 23, 1966, he commenced an action for divorce against June E. Foss, alleging that the parties to the action had lived separate and apart without cohabitation for more than three years preceding the commencement of the Nevada action. Process in the Nevada action was issued from the District Court for Clark County, Nevada, served by publication in Nevada, mailed to defendant at her Sioux Falls, South Dakota address and personally served on her in South Dakota on or about August 24, 1966.

Stimulated, no doubt, by service of Nevada process, defendant in the South Dakota action secured a stipulation signed by plaintiff's South Dakota attorney, providing that defendant might interpose an amended answer and cross-complaint for divorce, that plaintiff would reply thereto and that the cause might then be brought on for trial at the instance of either party. The amended answer and cross-complaint was served on plaintiff's South Dakota counsel on August 30, 1966 and a reply thereto was served upon counsel for defendant on August 31, 1966. The cross-complaint prayed for divorce on grounds of

extreme cruelty, with prayers for property settlement and alimony.

These steps accomplished, the South Dakota action languished through the ensuing fall and winter. Meanwhile, back in Las Vegas, the Clark County District Court, presented with a praecipe of default in the Nevada action, on September 15, 1966, entered a decree of absolute divorce to plaintiff, establishing there as jurisdictional elements that plaintiff, for more than six weeks prior to the date of verification of the complaint and on the date of the decree was a bona fide and actual resident and domiciliary of the State of Nevada, that defendant had been personally served with process, that she made no appearance in that action and that all of the allegations of the complaint were true. The decree in Nevada contented itself with severance of the matrimonial bonds between the parties, no reference therein being made to ancillary matters, although the plaintiff had prayed that the court there determine his obligation for alimony and maintenance.

Made aware of the entry of the Nevada decree, defendant on April 4, 1967, made and served a second amended answer and cross-complaint upon plaintiff's South Dakota counsel, a reply being interposed thereto on April 8, 1967. The issues framed by these latter pleadings were the same as those indicated by the earlier cross-complaint except that the second amendment set up the fact of the Nevada divorce, asking that it be held invalid by the trial court here as being based upon a simulated and fraudulent claim of domicile by plaintiff and further praying for divorce. The reply thereto asserts the validity of the Nevada divorce and asks dismissal of the South Dakota action for divorce, conceding that the South Dakota court might nevertheless maintain jurisdiction for the purpose of making a property settlement and providing maintenance.

These are the issues which came on for trial before the trial court on April 26, 1967. Memorandum decision was entered on June 29, 1967 and findings of fact and conclusions of law were entered, together with a decree granting defendant a divorce upon her cros-complaint on August 18, 1967.

The appeal with which we are first concerned is that wherein plaintiff, Joseph J. Foss, asserts that the trial court was without jurisdiction to enter a decree of divorce in favor of defendant, June E. Foss, no appeal being taken nor objection made to those portions of the decree relating to property settlement or allowances.

The proceedings in the Nevada forum were placed in evidence before the trial court by the introduction of authenticated copies of all pleadings and associated papers, no objection being made thereto. In addition to this showing, plaintiff testified at length concerning and in support of, his claim of domicile and residence in Nevada. Countervailing evidence on the part of the defendant consisted of testimony relating to plaintiff's statement that he would go elsewhere for a divorce and an exhibit consisting of an envelope, postmarked May 15, 1967 at Scottsdale, Arizona and addressed to defendant. This was the sum of the evidence going to the jurisdictional ground of domicile as plead by defendant.

Consideration of such evidence, as framed in the pleadings, proceeds from the proposition, basic in our law, that a judgment or decree of a court of one state is entitled to full faith and credit in all other states, in accordance with Article 4, § 1, U.S. Constitution, as elaborated by 28 U.S.C.A. § 1738.

■■ This proposition is subject, in conditions such as are here involved, to judicial examination and the "foreign judgment" subject to nullification in certain circumstances. The United States Supreme Court, in Williams v. North Carolina, 325 U.S. 226, 65 S.Ct. 1092, 89 L.Ed. 1577, in affirming the right of a state court to refuse recognition of the judgment or decree of a sister state, sets up as one requisite to such action, a "finding adverse to the necessary foundation for any valid sister-State judgment * * * amply supported in evidence". As there applied and here applicable under the pleadings, the only permissible finding which would justify judicial nullification of the Nevada decree would be one which determined that the Nevada domicile of the plaintiff was simulated and fraudulent. No such finding was made in this case.

In the instant case, the only "finding" which supports the invalidation of the Nevada decree in the trial court appears as Finding of Fact VI. This finding-conclusion reads as follows:

"That when the Defendant amended her pleadings and asked for a divorce in this action, the South Dakota court was the only court having jurisdiction to award the support and alimony requested by both parties, it being the only court having complete and effective jurisdiction of all matters embraced in the South Dakota action and that based upon the facts herein set forth, the Plaintiff's Nevada decree is not entitled to the 'full faith and credit' clause of the U. S. Constitution."

Since this finding, or what may be more proper, conclusion, is not clearly responsive to the issue of domiciliary jurisdiction as framed by the pleadings, we have had recourse to the memorandum decision of the trial court for possible explication of the rationale employed. There we find that the court says "I am of the opinion that the Nevada decree is not valid and effective to oust this court of jurisdiction. It would be against the public policy of this state to recognize such decree taken while the plaintiff by his counsel in an action which he commenced in South Dakota and which was pending in South Dakota stipulated to allow defendant to serve an amended complaint asking for divorce, replied thereto and agreed to trial on the amended pleadings." This at least partially clarifies the decision taken in the trial court, if it is otherwise supportable in the law.

█ █ If the decision was taken on the basis of "public policy", it cannot be sustained, however convenient it may appear to have all issues in one court. The case of Williams v. North Carolina, 317 U.S. 287, 63 S.Ct. 207, 87 L.Ed. 279, bars this avenue of attack upon the decree of a sister state, pointing out that the proper test of jurisdiction lies in the area of propriety of domicile and due process.

█ █ If, on the other hand, the decision below was taken on the theory that appellant's change of domicile was in

some manner wrongful, because his case was pending in South Dakota, or that the stipulation which was entered into in this state in some manner inhibited him from choosing any other domicile, or cast doubt upon its validity, the rules run to the contrary. As stated in 27B C.J.S. Divorce § 330:

> "Whether the foreign divorce action was commenced prior or subsequent to the one in issue is not controlling in deciding whether the resulting foreign decree will be recognized in the latter state."

Thus, in determining whether a foreign divorce decree is entitled to full faith and credit, it is immaterial that the action in which it is offered as a defense was instituted before the action in which the decree was rendered, particularly where the defendant named therein failed to appear and inform the foreign court of the pendency of the prior action.

■ Nor are the reasons which impel the husband to change his domicile in any sense material to consideration of the issue. Ragovis v. Ragovis, Sup., 124 N.Y.S.2d 655.

■ The stipulation which is mentioned by the trial court in the memorandum appears solely to have been entered into in order to permit defendant to present her case, as she has done. Its execution can hardly be said to have created an estoppel, nor can it seriously be urged that it conferred jurisdiction where the latter was not otherwise present.

■ Considering the whole record, we are impelled to the view that no acceptable legal grounds were shown to exist upon which the trial court could properly premise its determination of the invalidity of the Nevada decree. This being so, the ensuing determination of the trial court, allowing defendant a divorce on her cross-complaint, must be set aside and that portion of the judgment is reversed as contrary to law.

■ ■ In the light of this disposition of plaintiff's appeal, we are bound to consider his ancillary assertion that if his appeal be successful, this court must on the authority of

Nelson v. Nelson, 71 S.D. 342, 24 N.W.2d 327, set aside the allowance of attorney's fees below to be paid defendant's counsel by plaintiff. This argument fails in several particulars, not the least of which is that the case which here concerns us was, at all times before the trial court as an action for divorce, as distinguished from the form of action in NELSON, which was an independent action for alimony and property division. The instant action has remained an action for divorce, notwithstanding any action taken by this court on the appeal and, in such an action the trial court may, pursuant to SDC 14.0725 and while the cause is pending, require that the wife's attorney fees be paid by the opposing party. If it be argued that the jurisdictional res is now found to be lacking below, it does not follow that we, at this point, should invalidate the order for counsel fees because his client's cause shall have foundered on appeal. We cannot in good conscience hold that allowance of a fee under this law is contingent upon successful appeal, at least in the absence of a showing of bad faith, which does not here appear. Allowance of the fee by the trial court is therefore affirmed, no abuse of discretion being shown.

Proceeding now to consideration of the appeal of June E. Foss from the system of awards made to her by the decree of the trial court, we first observe that she does not contend that such awards should not have been made, nor does it appear in any of the pleadings or showings that plaintiff either in Nevada or South Dakota, ever sought to evade his legal responsibilities in this wise. On the contrary, plaintiff's "reply" to the cross-complaint of defendant in the trial court, contained a request that awards and allowances be made for maintenance of wife and child, apart from the marital issue.

The parties were married in 1942. They have three children, two married daughters and a minor son living at home with defendant who is handicapped by a severe diabetic condition which has obtained throughout the marital life of the parties. Plaintiff is an able-bodied man and was employed with an income at time of trial of $22,800 net, with future earnings problematical because he was then just entering upon a career as an independent producer of TV subjects.

The parties jointly owned 17,400 shares of Raven Industry stock worth $295,000, a residence in Sioux Falls worth from $33,000 to $35,000, and an unimproved lot in Sioux Falls worth $10,000. Encumbrances on the residence totaled $32,000, and yearly insurance and taxes exceeded $600. General debts were shown to be in the sum of $4,200 and given consideration in the findings relating to property division was an item for attorney fees set by the trial court of $5,000.

Based on consideration of the foregoing, the trial court entered its order requiring plaintiff to pay attorney's fees of approximately $5,000, to make monthly payments of maintenance of $800 to defendant, $100 of which was allocated to maintenance of the minor child of parties, to transfer title to the home and contents and to the unimproved lot in Sioux Falls to defendant, to affirm ownership in a 1962 Ford Galaxie in defendant, to pay off all encumbrances on the home and other expenses, totaling $37,000, to pay all future taxes and insurance on the residence, to deliver a life insurance policy on plaintiff's life payable to defendant as beneficiary, and to keep up premiums on the same. Plaintiff was awarded the Raven Industries stock, subject to a lien impressed by the trial court for payment of his obligations under the decree. Defendant assigns error as to these awards and division of property suggesting that they are insufficient, that abuse of discretion is shown thereby and that, all else standing as ordered, she should be awarded one-third of the stock, together with an increase of $100 in her monthly allowance.

■ We cannot agree with this contention. The trial court assiduously explored every aspect of this phase, observing that "the main thing is to assure Mrs. Foss proper support according to the station * * * of the parties and (the) ability of Mr. Foss to pay", noting further that the value of the stock was "speculative" and that such value in any case, was greater "in his (plaintiff's) hands than anybody else's." It is clear that the trial court, concerned with the ·speculative nature of the stock and the problematical income of plaintiff, struck a fair balance, with the principal thought in mind of securing to defendant her

proper support. This was a proper exercise of discretion. Judgment affirmed as to awards and division of property. No costs to be allowed.

All the Judges concur.

BANDY, Circuit Judge, sitting for HANSON, P. J., disqualified.

MANSON, Circuit Judge, sitting for RENTTO, J., disqualified.