**In re the MARRIAGE OF Harold FLORKE and Barbara J. Florke.**

**Upon the Petition of Harold FLORKE, Appellant,**

**and concerning**

**Barbara J. FLORKE, Appellee.**

**No. 2–60914.**

Supreme Court of Iowa.

Oct. 18, 1978.

Robert J. Crary of Crary, Huff, Yates & Clem, P. C., Sioux City, for appellant.

P. D. Furlong, Sioux City, for appellee.

ALLBEE, Justice.

This appeal by petitioner, Harold Florke, challenges the economic provisions of a decree dissolving the parties' 20 year marriage. His complaints fit within two categories. The first is that he is required to pay an excessive amount toward the support of his minor children and the respondent, Barbara J. Florke. The second is that trial court should not have provided for enforcement of certain provisions of the decree by ordering petitioner to deliver a quit claim deed for his interest in the family home to an escrow agent, with directions that the deed be delivered to respondent upon petitioner's substantial default.

Our review is de novo. *In re Marriage of Winegard,* 257 N.W.2d 609, 613 (Iowa 1977). In examining the interrelated questions of child support and alimony we are guided by the factors set forth in *In re Marriage of Zoellner,* 219 N.W.2d 517, 525 (Iowa 1974) and *Schantz v. Schantz,* 163 N.W.2d 398, 405 (Iowa 1968) as modified to remove considerations of fault by *In re Marriage of Williams,* 199 N.W.2d 339, 344–46 (Iowa 1972).

I. At the time of the decree petitioner was 47 years of age and respondent was 41. They were living on income produced by both. Petitioner received a military pension of $360 per month and took home $302 every two weeks from his job with a local theater operator. He had received a bonus of $500 the year before the decree and annual bonuses of $1000 in the years prior to that. Respondent was employed as a cook for a Sioux City high school and earned a take home pay of $208 every two weeks. Fifty dollars was deducted from each check and paid to her credit union. She was paid only during the nine month school year. The record reveals no special skills on her part which would indicate an earning capacity beyond her actual income.

The major assets of the parties were the family home, valued at $37,500, a 1969 Chevrolet and a 1968 Ford pickup. The home was encumbered by a first mortgage with a balance of $17,898.94. There was also a $5000 note which was secured by a second home mortgage and security interests in household goods and the Chevrolet. The pickup was encumbered for a debt of approximately $500. There were various bank and savings and loan accounts in the name of either both parties or petitioner alone. These totaled approximately $1200 to $1500 at the time of separation. At the time of decree, according to petitioner's testimony, these had dwindled to less than $100. Respondent had a savings account at her credit union which increased from $300 at separation to $600 at decree.

Trial evidence also disclosed that petitioner had several relatively small life insurance policies, that he qualified for government administered medical insurance, and that some contribution to his living expenses was made by another person with whom he lived.

Of the parties' four children, two were minors at the time of trial, being ages 17 and 15. By agreement respondent was awarded custody of both.

There is little indication of what the parties' economic positions or conditions were

prior to the marriage. Nor is there evidence of any special disabilities or needs on either party's part.

Petitioner testified to having monthly personal living expenses which we compute to range from $472 to $492. Respondent indicated in her financial statement that she had monthly expenses for herself and the two minor children of $791.99. This sum included utilities, mortgage payments, real estate taxes and insurance.

Trial court decreed that petitioner should pay $25 per week child support, $20 per week alimony, both the first and second mortgage payments on the home, real estate taxes, homeowner's insurance and utilities, except telephone. The first mortgage payment, including real estate taxes, was $218; the second mortgage payment was $150; the annual insurance premium was $172. It was further ordered that the real estate should be sold after both mortgages were paid in full and that the net proceeds be divided equally between the parties. The sale and division could be made earlier in the exercise of respondent's sole discretion. Petitioner was also required to maintain his existing insurance, pay the medical expenses of the children during their minority, pay the parties' debts to the date of the hearing and pay toward respondent's attorney fees another $200 above the temporary fees of $150 already paid.

■ Petitioner argues that the support burdens imposed upon him by the decree create an unreasonable hardship. His predicament, however, is not unique. Often in marriage dissolutions, incomes that were adequate to support married couples and their children are stretched precariously thin in order to cover the expense of maintaining two separate households. Such is the condition presented by this case. Nevertheless, we conclude that trial court's allocation of property rights and determination of petitioner's financial obligations are justified in all but two respects.

First, petitioner should not be required to pay respondent's utility bills, which average nearly $90 per month. This additional item is excessive under the circumstances; more-over, it is likely that utility usage and costs will be better controlled if the consumer pays the bills. Secondly, the sale of the home and division of the proceeds of that sale should occur upon the youngest surviving child attaining his or her majority, or graduating from high school, whichever occurs last. *Cf. In re Marriage of Wilcoxson*, 250 N.W.2d 425 (Iowa 1977). This change will permit the children to enjoy some measure of stability by leaving them in their home during their minority, but will allow petitioner the benefit of his equity as soon as that goal is accomplished. When the home is sold, petitioner's alimony liability shall increase to $50 per week because all of his obligations except alimony will have then expired and respondent will no longer enjoy the use of that home.

■ II. Petitioner's second complaint is that the provision for enforcement of his duty to make those payments which relate to the real estate is unreasonable. In that provision, trial court ordered petitioner to deliver a quit claim deed for his interest in the parties' real estate to an escrow agent. That escrow agent was to deliver the deed to respondent in the event of petitioner's substantial failure to make those payments.

We have reviewed Judge Blair's recent discussion of his concerns regarding the enforcement of dissolution decrees. Blair, Attacking the Caseload Dilemma: An Open Letter to the Bench and Bar of Iowa, 27 Drake L.Rev. 319 (1978). He contends that the use of contempt proceedings for that purpose is time consuming and that it cheapens the jurisdiction of the court. 27 Drake L.Rev. at 322 and 325. He suggests that alternatives are needed, and that contempt is no substitute for less severe methods of debt collection. The enforcement provision under consideration in this case is likely a response to some of these thoughtful and perhaps justifiable concerns. As can happen with such experimentation, however, the problems which this innovation creates are greater than those which it solves.

The decree establishes no requirement for notice to the petitioner that his failure is becoming, or has become, substantial. It fails to require a hearing before forfeiture. Yet the term "substantial failure" almost certainly would require litigation to define. Moreover, any such failure would have to be quite substantial in order to justify depriving petitioner of his half of the considerable equity. And the gravity of petitioner's potential forfeiture would become greater as he continues to be faithful in making his payments. Missing from the court's remedy is the flexibility of the willfulness requirement for contempt, § 598.23, The Code, which would protect petitioner if he should become disabled. *Porter v. Maxwell,* 208 Iowa 1224, 226 N.W. 917 (1929). Finally, whereas the primary interest should be to compel obedience to an order of the court, *Harkins v. Harkins,* 256 Iowa 207, 212, 127 N.W.2d 87, 90 (1964), the provision under consideration here appears to be essentially punitive in nature. It is thus impermissible. *Cf. Nystrom v. District Court in and for Woodbury County,* 244 Iowa 735, 739, 58 N.W.2d 40, 42 (1953) ("the court had no right to pronounce a sentence for imprisonment after compliance with the . . . divorce decree"). It must be excised.

On remand, trial court shall enter a revised decree consistent with this opinion. Costs on appeal shall be taxed equally to the parties.

AFFIRMED AS MODIFIED.

All Justices concur except McGIVERIN and LARSON, JJ., who take no part.