STATE of South Dakota, FALL RIVER COUNTY, ex rel. Constance M. DRYDEN, Plaintiff and Appellee,

v.

Thomas D. DRYDEN, Defendant and Appellant.

No. 15174.

Supreme Court of South Dakota.

Considered on Briefs Oct. 24, 1986.

Decided July 15, 1987.

Linda Lea M. Viken of Finch & Viken, Rapid City, for plaintiff and appellee; Kenneth R. Dewell, Sp. Asst. Atty. Gen., Hot Springs, on brief.

John H. Mairose of Fousek, Lefholz & Mairose, Rapid City, for defendant and appellant.

HENDERSON, Justice.

PROCEDURAL HISTORY/ISSUES

Plaintiffs-appellees Constance Stock (Constance) and the State of South Dakota (State) filed a Motion for Order to Show Cause against Constance's former husband, defendant-appellant Thomas Dryden (Thomas), praying the circuit court (1) find Thomas in contempt for his failure to make court-ordered child support payments; and

(2) modify the existing Decree of Divorce. The circuit court complied with both requests. Thomas appeals asserting that the court erred when it

(1) held him in contempt for failure to abide by a child support order when he had fully paid his child support debts prior to trial;

(2) required that he execute a wage assignment and pay Constance's attorney's fees ($477) in order to purge his contempt; and

(3) reallocated an Internal Revenue Service (IRS) exemption for one of his daughters from him to Constance.

Due to the natural inclination of the subject matter, Issues one and two are treated simultaneously. Issue three is addressed separately. We affirm in part and reverse in part.

### FACTS

Thomas and Constance were married on August 23, 1970. The marriage produced two children; Christine, born December 29, 1971, and Monica, born July 15, 1974. Constance filed for divorce in August 1983. A Stipulation and Agreement was signed on August 20, 1983. Regarding the children, Thomas and Constance agreed as follows:

(1) Constance shall have custody;

(2) Thomas shall pay $150 a month in child support for each child commencing November 1, 1983 and that subsequent payments are due on or before the first day of each month;

(3) Thomas need not pay child support when the girls visit him for one month during the summer;

(4) Thomas be entitled to claim both children as dependents for tax purposes;

(5) Thomas shall have the right set out in (4) for only so long as his child support payments are current; and

(6) Thomas shall maintain health insurance coverage on the girls.

On October 21, 1983, Constance was granted a divorce. All terms and conditions of above Stipulation and Agreement were expressly included in the Divorce Decree.

Thomas, however, did not make child support payments as he had promised. Payments were often late or nonexistent. In January 1984, Constance applied for Aid to Dependent Children (ADC) for Christine and Monica. Consequently, support payment rights were assigned, for a time, to the State of South Dakota.

Later in 1984, two Orders to Show Cause were entered. Both orders addressed Thomas' failure to pay child support. The second Order resulted in a Stipulation between Thomas and the State which was approved by the circuit court on January 5, 1985. Said Order:

(1) lowered Thomas' monthly support payments to $200;

(2) determined that Thomas was $475 in arrears ($225 to Constance and $250 to State), which would be satisfied by an additional monthly payment of $50 ($25 to Constance and $25 to State);

(3) reinstated the original $300 per month payment if Thomas' and his current spouse's net income reaches or exceeds $2,000 per month (proof of wages to be supplied monthly); and

(4) required that a six-month review be held upon request of any party.

Constance did not sign the Stipulation. But it does appear from the record that she was involved in negotiations and did at least initially agree upon the content of the Stipulation.

On August 23, 1985, a third Order to Show Cause was entered addressing Thomas' failure to make child support payments. Thomas was delinquent in the amount of $525 to Constance and $250 to State. On September 13, 1985, a hearing was held and Thomas was ordered to show cause why:

(1) he should not be held in contempt of court and jailed for refusing to comply with previous court orders;

(2) child support payments should not be increased;

(3) he should not be required to pay one-half of the medical, dental, optomet-

ric, and related costs for the children not covered by insurance;

(4) the Divorce Decree should not be modified to provide that Constance receive the IRS exemptions for the children;

(5) he should not be required to pay Constance's attorney's fees and costs; and

(6) he should not be ordered to execute a wage assignment.

Thomas responded by requesting an Order Modifying the Decree of Divorce. He specifically prayed that his child support obligation be reduced to $150 per month, citing a decrease in hours worked at his seasonal job as reason for this request. Thomas noted that his net pay as of August 24, 1985 was $9,033.80, but felt he might be dismissed from his job by Christmas. Thomas also pointed out that he had paid in full both Constance ($525 on September 5, 1985) and State ($250 on September 6, 1985) soon after he received the August 1985 Order to Show Cause.

Upon conclusion of the September 13 hearing, the following rulings were made. First, Thomas was found in contempt and sentenced to serve 30 days in the county jail for willfully disobeying the court's January 6, 1985 Order. This contempt could be purged upon Thomas' execution of a wage assignment and payment of Constance's attorney's fees. Second, the original Divorce Decree was modified to provide Constance with one of two IRS exemptions. Thomas' request for modification of child support amount was refused. Constance's request for one-half medical and other related expenses was refused, as was her request for increased child support.

Thomas executed the wage assignment on September 28, 1985. Constance's attorney's fees ($477) were to be paid within 120 days of the September 13, 1985 hearing. Thomas was expecting inheritance estimated at $6,000, which would enable him to pay his former wife's attorney's fees. Constance's attorney's fees were never paid. Thomas appeals.

## DECISION

### I. AND II.

■ This case involves a civil contempt proceeding pertaining to child support. *See Thomerson v. Thomerson,* 387 N.W.2d 509 (S.D.1986); *Simmons v. Simmons,* 66 S.D. 76, 278 N.W. 537 (1938). Thomas was found to be in willful disobedience of a circuit court order of January 6, 1985, for failure to pay child support. We reverse the Judgment and Order of Contempt entered on the thirteenth day of September, 1985, as at the time of the hearing on the Order to Show Cause for Contempt all arrearages had been paid to the State of South Dakota and to Constance. *See Cozik v. Cozik,* 279 Minn. 91, 98–99, 155 N.W.2d 471, 476 (1968) (where the Minnesota Supreme Court stated "[u]nless there has been an overt act which can be called contempt in itself, when the amounts in default are paid there is no longer any ground for a finding of contempt because if there was one it has been purged by the payment."). *Accord Nystrom v. District Court,* 244 Iowa 735, 58 N.W.2d 40 (1953). *See also In re Marriage of Florke,* 270 N.W.2d 643, 646 (Iowa 1978); *McDonald v. McDonald,* 170 N.W.2d 246, 247–48 (Iowa 1969) (both cases essentially noting that compliance with a court's order prior to contempt proceedings is regarded as sufficient purging). We have held when " 'the contempt consists in the refusal of a party to do something which he is ordered to do for the benefit or advantage of the opposite party, the process is civil, and he stands committed till he complies with the order. The order in such a case is not in the nature of a punishment, but is coercive, to compel him to act in accordance with the order of the court.' " *Karras v. Gannon,* 345 N.W.2d 854, 856 (S.D.1984) (quoting *State v. Knight,* 3 S.D. 509, 514, 54 N.W. 412, 413 (1893)). *See State v. Bullis,* 315 N.W.2d 485, 487 (S.D.1982). D. Dobbs, *Handbook on the Law of Remedies,* § 2.9, at 97 (1973). Here, there was nothing to coerce because Thomas had already submitted his child support payments. We reason that, at the time of the contempt hearing, there was simply nothing further that a contempt order could compel appellant to do; therefore, reversal of the circuit

court's finding of contempt is mandated.[1] Accordingly, we also reverse that part of the circuit court's decision relating to the wage assignment.

■ Constance argues that Thomas has waived his right to appeal the contempt order because of his execution of a wage assignment. She relies on *Lanphear v. Lanphear*, 303 N.W.2d 576 (S.D.1981), and *Kerr v. Kerr*, 74 S.D. 454, 54 N.W.2d 357 (1952). However, the circumstances in the present case appear to demand a different result than that one reached in *Kerr* and *Lanphear*. In those cases, one party lost the right to appeal a court-ordered payment to the second party when the first party paid those monies to the second party during the pendency of appeal. In our case, Thomas had to execute the wage assignment or go to jail on October 4, 1985. He was unable to appeal as the trial court's Findings of Fact and Conclusions of Law were not entered until October 18, 1985. Therefore, Thomas' September 28, 1985 wage assignment did not constitute a waiver of his right to contest contempt upon appeal.

Regarding attorney's fees, "[w]e have repeatedly held that this allowance rests in the sound discretion of trial court and will not be interfered with by this court, unless it appears there was err [sic] in the exercise thereof." *Jones v. Jones*, 334 N.W.2d 492, 494 (S.D.1983) (citing *Pochop v. Pochop*, 89 S.D. 466, 233 N.W.2d 806 (1975); *Foss v. Foss*, 83 S.D. 574, 163 N.W.2d 354 (1968); *Kuehn v. Kuehn*, 74 S.D. 521, 55 N.W.2d 70 (1952); *Baron v. Baron*, 71 S.D. 641, 28 N.W.2d 836 (1947)). Even though payment of Constance's attorney's fees by Thomas was coupled with the contempt portion of this case, we do not find that the circuit court erred in this area. We note that the trial court is being sustained in its ruling that the divorce decree should be modified to provide that Constance receive an IRS exemption for one child. She is therefore entitled to an award of attorney's

fees below and we accordingly affirm the award of $477 to Linda Lea M. Viken, attorney for Constance M. Stock, unto whom the award was made. No mention was made whatsoever to any award for attorney's fees unto the State's Attorney.

### III.

Thomas advocates the circuit court erred when it allowed Constance to claim one of two IRS exemptions. He asserts (1) no change of circumstances occurred since the January 6, 1985 Modification; and (2) he was current in his support payments in compliance with the terms of the Original Divorce Decree. Thomas concludes reversal is mandated. We disagree.

■ There can be no modification of a divorce decree unless a change of circumstances can be shown to have affected one or both of the parties. *Gross v. Gross*, 355 N.W.2d 4, 8 (S.D.1984); *Herndon v. Herndon*, 305 N.W.2d 917, 918 (S.D.1981); *Jameson v. Jameson*, 90 S.D. 179, 182, 239 N.W.2d 5, 6 (1976). Circuit courts have continuing jurisdiction to modify child support obligations, *Hood v. Hood*, 335 N.W.2d 349, 351 (S.D.1983) (citing *State ex rel. Larsgaard v. Larsgaard*, 298 N.W.2d 381, 383–84 (S.D.1980)), and are statutorily infused with broad powers to implement modifications "from time to time," SDCL 25-4-41, and "as may seem necessary or proper...." SDCL 25-4-45. *See Larsgaard*, 298 N.W.2d at 383. We will not tamper with modification decisions unless the circuit court has acted in a manner which amounts to an abuse of its discretion; "a discretion exercised to an end or purpose not justified by, and clearly against, reason and evidence." *Gross*, 355 N.W.2d at 7; *Herndon*, 305 N.W.2d at 918; *Root v. Bingham*, 26 S.D. 118, 120, 128 N.W. 132, 133 (1910) (quoting *Murray v. Buell*, 74 Wis. 14, 19, 41 N.W. 1010, 1012 (1889)). Deference must also be accorded a circuit court's findings due to its opportuni-

---

1. We take note of 1986 S.D.Sess.Laws ch. 218, § 22, and SDCL 25-7A-23, which essentially provides that any obligor who becomes delinquent in paying any part of the order of support may be subject to an order for the retention of property or income. Apparently, a finding of contempt is no longer a prerequisite to a mandatory execution of a wage assignment. SDCL ch. 25-7A went into effect on July 1, 1986.

ty to view the witnesses and judge the credibility of their testimony. *Gross*, 355 N.W.2d at 7.

■ Applying these principles to the present case, we cannot say that the circuit court abused its discretion. First, Thomas established a practice of reneging on his promises of child support to the extent that three Orders to Show Cause were entered against him in less than two years and his ex-wife was forced to assign child support payment rights to the State, for a time, and receive ADC. Second, Constance noted that she, alone, had to absorb the costs, uncovered by insurance, of her daughters' medical, dental and optometric services, which are sure to increase as the girls grow older. *See Gross*, 355 N.W.2d at 7–8. Third, Thomas' child support payments were lowered from $300 to $200 via the January 5, 1985 Order resulting from a Stipulation between Thomas and the State. Fourth, it was uncontroverted that Thomas would receive at least $6,000 from his grandmother's estate. The circuit court's shift of one IRS exemption to Constance was not a clear abuse of discretion.[2]

■ Lastly, the State's Attorney of Fall River County has joined in a seventeen-page brief with Constance's private attorney, Linda Lea M. Viken, and they have requested appellate attorney's fees as follows:

State's Attorney requests attorney's fees of $1,012.13 (at $50 per hour) and costs of $61.82, for a total of $1,073.95;

Linda Lea M. Viken requests attorney's fees of $919.38 (at $70 per hour) and costs of $49.84, plus tax of $43.50, for a total of $1,011.85.

Motions and itemized statements, by private counsel and the State's Attorney, were filed in support of their claims. *See Tesch v. Tesch*, 399 N.W.2d 880, 885 (S.D.1987); *Thomerson v. Thomerson*, 387 N.W.2d 509, 515 (S.D.1986); *Stubbe v. Stubbe*, 376 N.W.2d 807, 809 (S.D.1985); *Malcolm v. Malcolm*, 365 N.W.2d 863, 866 (S.D.1985). The combined total of attorneys' fees requested by the two attorneys was $2,085.80. As Constance was partially successful in defending this appeal, we award her private counsel the sum of $1,011.85, holding that this is a fair award for the total briefing in this case. This case was considered on the briefs and no oral argument nor trip to the state capitol was required. It appears from the brief that Kenneth R. Dewell, State's Attorney of Fall River County, acts as "attorney for appellee, State of South Dakota." We cannot award a double attorney's fee in this case. This is the total amount of appellate attorney's fees awarded and if there is some type of oral arrangement or written contract between private counsel and counsel for the State of South Dakota, implementation of same is left to the contracting parties which may be supervised by the circuit court.

The judgment is affirmed in part and reversed in part.

---

**2.** Prior to January 1, 1985, a trial judge could assign IRS exemptions for minor children to either the custodial or non-custodial parent. 26 U.S.C. § 152(e) (1982). This is no longer permitted. *See* 26 U.S.C. § 152(e) (1982 and Supp. 1984). Now, custodial parents automatically get these exemptions and may, if they choose, transfer deductions to non-custodial parents. There are three exceptions to the general rule; one of which provides that a non-custodial parent shall be entitled to an exemption if (1) a qualified pre–1985 instrument between the parents provides that the non-custodial parent is entitled to an exemption, and (2) the non-custodial parent contributes at least $600 for the support of such child during the calendar year. A qualified pre–1985 instrument is defined as any decree of divorce, etc., executed before January 1, 1985 which expressly allocates an exemption to the non-custodial parent and which is not later changed by the parents in a modification "which expressly provides that this paragraph shall not apply to such decree or agreement." *Id.;* 26 U.S.C. § 152(e); 26 U.S.C.S. § 152(e) (Law.Co-op 1984 and Supp.1986). *See* Internal Revenue Acts, Pub.L. No. 98–369, § 423, 98 Stat. 799–800, 377–78, Leg.Hist. 1308–11 (1984). *See also* 33 Am.Jur.2d *Federal Taxation* §§ 1138–39 (1987).

Constance and Thomas were divorced in 1983. Thomas was entitled to claim both children as dependents. There was no post-January 1, 1985 express modification of the 1983 Divorce Decree which removed it from "qualified pre–1985 instrument" status. Therefore, the trial judge was within his power to grant Constance's request that she receive one of two IRS exemptions.

WUEST, C.J., and FOSHEIM, Retired Justice, concur.

SABERS, J., concurs specially.

MORGAN, J., concurs in part and dissents in part.

MILLER, J., not having been a member of the Court at the time this action was submitted to the Court, did not participate.

SABERS, Justice (concurring specially).

I write specially to point out that even though defendant purged himself of contempt by making full payment, his repeated refusal to pay necessitated three order to show cause matters since January 6, 1984. These actions constitute sufficient change of circumstances to entitle plaintiff to:

1) attorney's fees, tax and costs for both trial and appeal;

2) the I.R.S. exemption; and

3) the wage assignment.

MORGAN, Justice (concurring in part and dissenting in part).

I concur in the majority decision on the third issue with respect to the IRS deductions for the children, but I must dissent from the disposition of the first two issues reversing the finding of contempt.

The majority opinion correctly notes the distinction between criminal and civil contempt proceedings. There is no question but what the proceeding below was for civil contempt, nor do I believe that the trial court acted under anything but civil contempt procedures. The trial court did not incarcerate, nor threaten to incarcerate, Thomas in retribution for his past failures to make child support payments and that appears to be the beam in the eye of the majority.

In adhering to all of the bright-line decisions on the contempt process, we must be mindful that "[t]he purpose of contempt proceedings is to uphold the power of the court, and also to secure to suitors therein the rights by it awarded." *Simmons v. Simmons,* 66 S.D. 76, 78, 278 N.W. 537, 538 (1938). A reading of the Iowa cases cited by the majority discloses a slight mistake in the summary of their essence. Rather than noting that compliance with a court's order prior to contempt proceedings is regarded as sufficient purging, as the majority opinion states, *Nystrom v. District Court,*[1] as reiterated in *McDonald v. McDonald,*[2] states:

> It seems to be the general rule that prompt compliance after institution of contempt proceedings with the court order or decree alleged to have been disobeyed will *usually* be regarded as a sufficient purging, 'especially when no material injury or loss has been suffered by the party for whose benefit the action was taken.' (Emphasis added.)

Thus, we should note that the rule is not black or white as the majority would hold. Rather, it implies that there may be cases that do not fall into the "usual" category.

The majority cites to *Karras v. Gannon,* 345 N.W.2d 854 (S.D.1984), a case that I find particularly inappropriate. In *Karras,* the issue appeared to be whether a tenant could be held in contempt for failure to comply with an oral order to give adequate notice to his landlord of the commencement of harvesting a crop on the landlord's land. The decision found the distinction between the civil and the criminal aspects to be "blurred" but ultimately reversed the finding of contempt because the order relied on was oral, never reduced to writing, signed, attested, filed and served on the tenant. Aside from the distinction in the basis for the decisions, I would point out that the so-called "order" in *Karras* was a one-time direction, an example of the "usual" case.

In a similar vein, the Minnesota case cited in the majority decision is a one-shot order, exemplary of the "usual" situation. In *Cozik v. Cozik,*[3] the decision examined a contempt citation for failure to make payments of alimony and child support *pendente lite.* However, the hearing was not

---

1. 244 Iowa 735, 739, 58 N.W.2d 40, 42 (1953).

2. 170 N.W.2d 246, 247–48 (Iowa 1969).

3. 279 Minn. 91, 155 N.W.2d 471 (1968).

held until after the decree of divorce was entered. There, when the delinquent husband and father paid up the defalcation before the hearing, there was, indeed, nothing to coerce.

The order in the case before the trial court below, incorporated in the decree of divorce and as amended, was a continuing order. It required continuing monthly payments of child support until the children attained majority. It also apparently resulted in a continuing failure on the part of Thomas to make timely payments. At least the record reflects that he had failed to make timely payments on several prior occasions. On one occasion, Constance had to apply to the State for ADC. The appeal before us results from the third proceedings by which Thomas has been called into court under threat of contempt for his failure to make payments in compliance with the divorce decree. Thus, I find this case distinguishable from *Karras* and *Cozik.*

In this case, the trial court in issuing the order to show cause was trying to coerce Thomas to make the payments that were overdue, *and* into henceforth insuring timely payments by requiring that he execute a wage assignment. Thomas, by paying at the last minute so that he could waltz into court and wave the receipt under the judge's nose claiming to have purged himself, may be correct as to the money-due aspect of the order, but that has nothing to do with the failure to be timely in the payments. That is what the trial court was getting at and I think very properly held Thomas in contempt for his failure to pay in a timely fashion, which gave him an opportunity to relieve himself by acting according to a condition in the contempt order, to-wit: execute a wage assignment. All Thomas had to do was sign the wage assignment and he could walk. Contrary to the statement in the majority decision, there *was* something to coerce besides the overdue child support payments.

I think that it is absolutely essential that we give our trial courts the tools with which to support their orders. This case appears to be the typical case where the parent decides that he is going to meet his other obligations before he meets his support obligations. Thomas complains that the trial court failed to properly consider his other obligations. But, as we have previously held, where the defense is inability to pay, the burden shifts to the defendant to establish his inability to comply. Self-serving testimony alone is insufficient and corroboration is necessary to establish the defense. *Rousseau v. Gesinger,* 330 N.W.2d 522 (S.D.1983). From my review of the record, I find such showing to be utterly lacking.

Lastly, on the issue of attorney's fees, I agree with the majority disposition although, because I would affirm the trial court on all issues, I have less difficulty in awarding the fees. Examination of the record discloses a letter from Constance pleading with the trial court to stop this appeal because she cannot afford the attorney fees. This is pertinent proof of the injury done to Constance by Thomas' game playing with support payments and the crying need to protect the children by insuring that the delinquent party pays the fees and costs incurred.

In *Brunick v. Brunick,* 405 N.W.2d 633 (S.D.1987), citing *Blare v. Blare,* 302 N.W.2d 787 (S.D.1981), we determined that a trial court's jurisdiction in a divorce proceeding continues to encompass actions to modify the judgment concerning support and maintenance of the children. Divorce actions are exempt from the prohibition against attorney fees absent an express statutory authorization. SDCL 15–17–7. Therefore, I would maintain that any time a trial court finds that a parent who is delinquent in support payments and otherwise satisfies the four elements warranting a finding of contempt,[4] but who escapes the adjudication of contempt because he or she has come in and paid up, that trial court can, in its judicial discretion, award attorney fees and costs to the ex-spouse who

---

**4.** "(1) the existence of an order; (2) knowledge of the order; (3) ability to comply with the order; and (4) willful or contumacious disobedience of the order." *Thomerson v. Thomerson,* 387 N.W.2d 509, 512–13 (S.D.1986).

had to start the contempt proceedings in order to wring out the payments required by the decree or order.