Mary Jane WALLAHAN, Plaintiff
and Respondent,

v.

Franklin J. WALLAHAN, Defendant
and Appellant.

No. 12522.

Supreme Court of South Dakota.

Argued May 16, 1979.

Decided Sept. 26, 1979.

Fred M. Winkler of Lynn, Jackson, Shultz, Ireland & Lebrun, Rapid City, Curtis D. Ireland of Lynn, Jackson, Shultz, Ireland & Lebrun, Rapid City, on brief, for plaintiff and respondent.

Ronald W. Banks of Nelson, Harding, Banks, Fitzgerald & Johnson, Rapid City, William G. Porter of Costello, Porter, Hill, Nelson, Heisterkamp & Bushnell, Rapid City, on brief, for defendant and appellant.

HALL, Circuit Judge.

The defendant, Franklin J. Wallahan, has appealed from the portion of the judgment of the circuit court regarding child support, alimony, property division and attorneys' fees in this divorce action. We affirm that judgment and remand the case to the trial court for a determination of plaintiff's request for allowance of attorneys' fees incurred in defending this appeal.

The parties were married in June of 1956 and at the time of trial each was forty-

three years old, in good health,[1] and had been married for twenty-one years. Plaintiff, Mary Jane Wallahan, is a registered nurse with a degree in nursing and defendant is a lawyer. Plaintiff had been employed as a registered nurse in Omaha, Nebraska, for approximately one year prior to the marriage. Defendant, at the time of the marriage, was working at the stockyards in the daytime and at a service station in the evenings. Neither party then had any property, except that defendant owned a DeSoto automobile and each of the parties had a few dollars cash.

In the fall of 1956 the parties moved to Vermillion so that defendant could resume his college studies. He had previously attended college for one quarter, but his education was interrupted by a tour in the Armed Forces. During the time between the fall of 1956, when defendant reentered college, and June of 1961, when he was awarded his law degree, plaintiff supported defendant and herself through her employment as a registered nurse at hospitals in Yankton and Vermillion. Plaintiff provided income not only for the household expenses but also for some of defendant's educational expenses. Defendant was able to pay part of his college expenses through the G.I. Bill, but these benefits ran out in 1959.

After defendant's graduation from law school, the parties moved to Minneapolis, Minnesota. Defendant was employed for one year as a law clerk for a Minnesota judge and became associated with a Minneapolis law firm upon the completion of his one-year clerkship. While the parties were living in Minneapolis plaintiff gave birth to the parties' second child, a daughter, born March 21, 1962. The first daughter was born on April 5, 1958, while the parties were still living in Vermillion. The third child, a son, was born on November 28, 1964, in Rapid City.

Although plaintiff did not work during her pregnancy in Minneapolis, she did return to work on a part-time basis after the second child was five months old, and she worked on a full-time basis for the last two months the parties lived in Minneapolis.

The parties moved to Rapid City, South Dakota, during the summer of 1963, and defendant has been practicing law there since that time. At the time of this move they had not achieved any significant accumulation of property. After the parties moved to Rapid City, plaintiff discontinued her employment as a registered nurse and has not been gainfully employed outside the home since 1963. This termination of her employment was by a mutual agreement of the parties and due to the fact that there were two small children to be cared for.

The move to Rapid City proved to be the turning point in defendant's financial affairs. It is undisputed that defendant worked very hard and that he was ambitious, capable and successful in his law practice. The parties' assets were all accumulated during the twenty-one years that the parties were married and can be attributed mainly to defendant's hard work and prudent investment.

Plaintiff contributed to the success of the family and accumulation of property by being a good mother and housekeeper and by assisting defendant in the social obligations of a lawyer and politician. She also made a substantial monetary contribution by financing defendant's education.

The trial court found that the adjusted gross income of defendant from 1972 through 1976 was as follows:

1972 ...................... $154,857.62
1973 ...................... $101,159.20
1974 ...................... $ 73,695.04
1975 ...................... $119,709.60
1976 ...................... $102,938.12

The parties stipulated to the values of nearly all their assets, and the trial court determined that defendant's net worth was

---

1. Plaintiff testified that she has a very weak back with a chip off one side of a vertebra. The orthopedic physicians she consulted one year and two years prior to the divorce advised her not to do any heavy lifting, painting, or anything that strains the back. No finding was made as to this back condition.

$437,564.00. The trial court awarded plaintiff $194,861.26 in cash and other assets.[2]

Defendant was awarded all the remaining property.

Custody of the two minor children was granted to plaintiff with child support in the amount of $500.00 per month for each, such child support to continue for each child until that child is eighteen or otherwise becomes emancipated. Prior to the time this appeal was argued the youngest child was, by agreement of the parties, transferred to the custody of defendant and the child support payment for this child was discontinued. The child for whom support payments are being made will be eighteen in March of 1980, and the payments will then terminate.

Plaintiff was granted alimony in the sum of $700.00 per month until either party dies or until plaintiff remarries.

The trial court awarded plaintiff attorneys' fees of $5,500.00, plus sales tax at the rate of 5.5%, and her costs of $1,377.71.

Finally, the trial court allowed plaintiff to remain the owner of term life insurance policies in the amount of $300,000.00 on the life of defendant. The court left it up to plaintiff to decide whether she will maintain these policies in force at her expense or transfer them to defendant.

After a one-day trial, counsel submitted briefs and the trial court thereafter filed a memorandum opinion directing plaintiff's counsel to prepare findings of fact and conclusions of law consistent therewith. The court refused the fifty-one findings of fact proposed by defendant and adopted those proposed by plaintiff.

Defendant's appeal presents eighty-one assignments of error, which can be condensed into the following issues:

1. Whether the trial court's findings of fact are insufficient to support the alimony allowance;

2. Whether the trial court failed to fully consider federal income tax consequences in making the property division and alimony award;

3. Whether the trial court committed prejudicial error by not reducing the values of three Keogh retirement funds to their "present value" to determine defendant's net worth;

4. Whether the division of property and the alimony award are clearly erroneous and an abuse of the trial court's discretion;

5. Whether the child support allowance is clearly erroneous and an abuse of the trial court's discretion;

6. Whether the award to plaintiff of $300,000.00 term life insurance on defendant's life is clearly erroneous and an abuse of the trial court's discretion;

7. Whether the award of attorneys' fees to plaintiff is clearly erroneous and an abuse of the trial court's discretion.

■ In making an award of alimony and an equitable division of property the trial court must consider the duration of the marriage, the ages of the parties, their state of health and their competency to earn a living, the value and income-producing capacity of the property of each party, and the contribution of each party to the accumulation of the property. *Lien v. Lien*, 278 N.W.2d 436 (S.D.1979); *Kittelson v. Kittelson*, 272 N.W.2d 86 (S.D.1978); *Kressly v. Kressly*, 77 S.D. 143, 87 N.W.2d 601 (1958). Defendant contends that the trial court failed to make findings of fact with regard to plaintiff's earning capacity and her contribution to the accumulation of the property and that consequently, the alimony award and property division must fail.

---

**2.** The award was broken down as follows:
Cash to be paid within 60 days in the amount of $20,000.00;
Bank account of $8,317.53;
Promissory note of Western Finance Corp. in the amount of $100,000.00;
Residence with equity value determined by the court to be $52,993.73;
Household furnishings valued by the court at $7,000.00;
Diamond ring valued by the court at $3,250.00;
Automobile valued at $3,300.00.
(By agreement of the parties, the cash award was reduced by $4,800 and plaintiff received a second automobile instead.)

■ Findings of fact should consist of ultimate facts rather than evidentiary facts. *Riley v. Jorgenson*, 35 S.D. 91, 150 N.W. 771 (1915); *Davison v. Kellar*, 35 S.D. 285, 152 N.W. 106 (1915); *Tschetter v. Ray*, 28 S.D. 604, 134 N.W. 796 (1912); *Smith v. Cleaver*, 25 S.D. 351, 126 N.W. 589 (1910). "It is not necessary or proper in a finding to state the evidentiary or probative facts upon which the ultimate facts stated in the findings are based." *Riley v. Jorgenson*, 35 S.D. at 93, 150 N.W. at 772. Defendant's proposed findings of fact are lengthy and detailed and consist almost entirely of evidentiary, rather than ultimate facts. The trial court properly refused to adopt them. On the other hand, plaintiff's findings of fact, adopted by the trial court, consist of statements of ultimate fact which adequately cover all the required factors. We are satisfied that the trial court considered each of the necessary factors and that no significant deficiency exists in the findings.

Defendant contends the trial court erred in making the property division and alimony award without recognizing the resulting federal tax ramifications and defendant's contingent liabilities. More specifically, defendant claims that (1) the court did not give full consideration to the imposition of capital gains tax which will arise from the court's order that plaintiff be awarded the parties' residence; (2) the court did not consider the availability to plaintiff of social security benefits; and (3) the court did not consider defendant's contingent liabilities of $384,000.00 in apportioning the property between the parties.

■ The trial court in its Memorandum Decision stated "the taxation problem is involved and . . . deserves careful consideration by this court in order to preserve the assets of the parties," and in Finding of Fact No. X stated:

The Court finds that the property transfer which will, all things considered, result in the least immediate adverse tax consequences to the parties, particularly the Defendant, will be a transfer of the family residence at 2711 Frontier Place, cash, the Western Finance Corporation note, the diamond ring, and the 1974 Toyota Mark II; in this regard the Court further finds that consideration of future possible tax consequences on property retained by Defendant and his contingent tax liabilities associated therewith are too speculative and conjectural for this Court to consider.

It is evident that the trial court was following the well-settled rule that theoretical tax consequences on transactions which are not necessary or probable but merely conjectural need not be considered. *Lien v. Lien*, supra; *Wahl v. Wahl*, 39 Wis.2d 510, 159 N.W.2d 651 (1968).

■ With regard to the court's determination that plaintiff should be awarded the house which was held by the parties in joint tenancy, defendant claims that he will be subjected to full capital gains taxation. Plaintiff disputes this. On the basis of the conflicting claims and in the absence of any concrete evidence of the tax consequences of this transfer, we find no error in the trial court's refusal to speculate on the possible tax, particularly in view of the court's consideration of the tax problems as indicated in Finding No. X.

■ Defendant cites *Locke v. Locke*, 263 N.W.2d 694, 696 (Iowa 1978), for the proposition that "the presence or absence of social security benefits is a factor to consider . . . ." The *Locke* decision also stated, however, that under the social security laws,[3] the wife will not be entitled to such benefits in the event she remarries. Any consideration the trial court might have given to social security benefits in this case could only have been minimal since plaintiff is in her early forties and may remarry. The trial court could not know whether plaintiff would or would not receive such benefits and we find no error in its refusal to speculate on the question.

■ Defendant claims that the trial court should have distributed $384,000.00 in contingent liabilities between the parties

---

3. 42 U.S.C. §§ 402 and 416 (1970).

pro rata according to the percentage of assets awarded to each. Defendant, however, testified that the contingent liabilities are extremely remote and his ever being held liable on them is highly unlikely. "[C]ontingent liabilities that may never be paid or that may be paid only in part need not be deducted in determining net worth." *Wahl v. Wahl*, 39 Wis.2d at 524, 159 N.W.2d at 659. Speculative contingent liabilities should not be considered in apportioning the parties' assets for purposes of a property division. We find no error in the trial court's refusal to impose these possible liabilities on plaintiff.

It is clear from the decree in this case that the trial court attempted to create a scheme of distribution which would take into account as fully as possible any immediate tax consequences without indulging in speculation as to possible tax liabilities which might theoretically arise. Overall, we find no abuse of discretion in the court's distribution of property and award of alimony in light of federal income tax consequences.

■ Defendant deposited $25,000.00 into three separate Keogh retirement funds between 1972 and 1976. Plaintiff and defendant stipulated at the trial that the total present market value of the stocks in the three funds was $32,245.65 according to the most recent stock brokerage quotation available. The trial court used this stipulated value in determining defendant's net worth. Defendant cites *Miller v. Miller*, 83 Mich.App. 672, 269 N.W.2d 264 (1978), for the proposition that the trial court should have reduced the value of the retirement funds to their "ascertainable present value" to determine his net worth. The evidence indicates that defendant is in the fifty percent tax bracket for income tax purposes, and the $32,245.65 value of the stocks would be reduced by income tax and penalty if they were removed from the tax sheltered Keogh account and made available in cash for this property division.[4] There is no proof that defendant will be required to liquidate his Keogh fund to meet the requirements of the property division. Therefore, we decline, as did the trial court, to indulge in such speculation to determine net worth. See *Lien v. Lien*, supra; *Wahl v. Wahl*, supra.

■ The trial court must make an equitable division of the property of the parties and may compel one party to pay support to the other in an amount which is suitable for such period as may be just, giving due consideration to equity and the circumstances of the parties. SDCL 25–4–41 and SDCL 25–4–44. As previously mentioned, the trial court must consider the duration of the marriage, the value of the property, the ages of the parties, the state of health of the parties and their respective earning capacities, the contribution of each to the accumulation of property and the income-producing capacity of the parties' assets. *Lien v. Lien*, supra; *Kressly v. Kressly*, supra. The trial court has broad discretion in making a division of property and awarding alimony and this court will not set aside or modify its decision unless it clearly appears that the court abused its discretion. *Lien v. Lien*, supra; *Hansen v. Hansen*, 273 N.W.2d 749 (S.D.1979); *Kittelson v. Kittelson*, supra; *Wipf v. Wipf*, 273 N.W.2d 124 (S.D.1978). In determining whether the trial court abused its discretion, the property division and alimony award will be considered together. *Lien v. Lien*, supra; *Wahl v. Wahl*, supra.

■ In addition to property awarded to plaintiff, alimony was awarded in the amount of $700.00 per month until plaintiff's death or remarriage and was not made an obligation of defendant's estate in the event of his death. The record is replete with evidence that plaintiff made substantial contributions as a homemaker and mother during the couple's twenty-two years of marriage, that she gave up her career as a nurse to raise the children, that her earnings during the early years of their

---

**4.** In his brief, defendant argues that the "present value" of the retirement funds is merely $8,383.86 because $23,853.00 would have to be paid as taxes and penalties if the funds were liquidated prior to 1994.

marriage were dedicated to putting defendant through college and law school, that she has not practiced her profession for fifteen years, and that she provided moral support and encouragement to defendant during the twenty-two years that the parties' assets were accumulated. Taken together, these facts support and justify the trial court's division of property and award of alimony. While it is true that "[a]limony will not be awarded in such an amount as would allow a wife capable of work to sit in idleness," *Guindon v. Guindon*, 256 N.W.2d 894, 898 (S.D.1977), it is equally true that alimony "will [not] be denied merely because she may be able to obtain employment and support herself." 256 N.W.2d at 898. The court properly considered the fact that plaintiff is removed from her profession by fifteen years and still has obligations with regard to raising her children. Although evidence was presented to the effect that nursing positions are available in Rapid City, the trial court could properly balance job availability against plaintiff's long absence from the labor market and her family responsibilities. Considering the evidence as a whole, we cannot say that the trial court abused its discretion in dividing the property or awarding alimony.

■■■ In granting child support, the trial court must consider the reasonable, rather than extravagant, expenditures such as are suitable to the children's circumstances and situation in life and the father's financial means and ability to pay. *Matthews v. Matthews*, 71 S.D. 115, 22 N.W.2d 27 (1946). The evidence in this case clearly shows that the Wallahan children are accustomed to a rather high standard of living and that defendant's income from his law practice and other business ventures enables him to pay $500.00 per month per child without working a hardship on him. Viewing the evidence as a whole, we cannot say that the award is excessive or that the trial court clearly abused its discretion in making the child support award.

■■■ Plaintiff was named as the owner of term life insurance for $300,000.00 carried on the life of defendant, ostensibly for estate planning purposes since she did not contribute financially to the purchase. The trial court awarded this life insurance to plaintiff, leaving defendant with other life insurance in the sum of $79,000.00. The court also ordered that plaintiff bear total responsibility for maintaining the life insurance policies awarded her. Defendant contends he should have been allowed to retain the policies and name his children as beneficiaries. To support his proposition, defendant cites cases which hold that a husband should not be required to relinquish life insurance policies to his wife and still be compelled to pay the premium.[5] These cases are inapposite to this case, however, since defendant has no obligation under the trial court's decree to maintain the life insurance policies; that responsibility rests solely with plaintiff. The policies have no equity value so plaintiff can receive no additional monetary compensation by virtue of the award. Furthermore, there is no evidence that defendant is uninsurable so that he cannot obtain other insurance and name his children as beneficiaries if he wishes. Since the trial court did not make the alimony award a lien on defendant's estate in the event of his death, it is apparent that the award of these life insurance policies to plaintiff was made to assure that she would be adequately provided for if defendant should die. We find no abuse of discretion in the trial court's award of the life insurance.

■■■ Defendant does not object to the amount of attorneys' fees charged by plaintiff's attorneys but claims that plaintiff has sufficient assets with which to pay her own attorneys' fees, and the trial court therefore erred in awarding such fees to her. The trial court may allow attorneys' fees to a wife in a divorce action "where the allowance of the same before or after judgment shall seem warranted and necessary to the

---

5.  *Clark v. Clark*, 460 P.2d 936 (Okl.1969); *Menor v. Menor*, 154 Colo. 475, 391 P.2d 473 (1964).

court." SDCL 15–17–7. Since defendant agrees that the attorneys' fees are reasonable, the only question is what, if any, portion of those fees should be allowed as costs and paid by defendant. The allowance of attorneys' fees rests in the sound discretion of the trial court, and will not be interfered with by this court unless it appears that there is error in the exercise of that discretion. *Lien v. Lien*, supra; *Pochop v. Pochop*, 89 S.D. 466, 233 N.W.2d 806 (1975); *Foss v. Foss*, 83 S.D. 574, 163 N.W.2d 354 (1968); *Kuehn v. Kuehn*, 74 S.D. 521, 55 N.W.2d 70 (1952); *Baron v. Baron*, 71 S.D. 641, 28 N.W.2d 836 (1947).

In determining the portion that should be paid by the husband, the trial court should consider the property owned by each party, their relative incomes, whether the wife's property is in liquid or fixed assets, whether the actions of the wife or of the husband unreasonably increased the time spent on the case. *Lien v. Lien*, supra; *Jameson v. Jameson*, 239 N.W.2d 5 (S.D.1976); *Iverson v. Iverson*, 241 N.W.2d 583 (S.D.1976); *Rock v. Rock*, 236 N.W.2d 191 (S.D.1975); *De Witt v. De Witt*, 86 S.D. 59, 191 N.W.2d 177 (1971). With these factors in mind and considering the evidence presented in this case, we cannot conclude that the trial court abused its discretion in requiring defendant to pay the full amount of plaintiff's attorneys' fees.

Plaintiff is requesting that she also be allowed her attorneys' fees which arise from this appeal. Since the reasonableness of those fees has not been established, and defendant has not stipulated to their reasonableness, we remand for the limited purpose of having the trial court determine the reasonable amount of plaintiff's attorneys' fees for this appeal and the portion thereof, if any, defendant should pay.

The judgment of the circuit court is affirmed and the case remanded for determination of plaintiff's request for attorneys' fees for this appeal.

WOLLMAN, C. J., MORGAN and FOSHEIM, JJ., and WUEST, Circuit Judge, concur.

HALL, Circuit Judge, sitting for DUNN, J., disqualified.

WUEST, Circuit Judge, sitting for HENDERSON, J., disqualified.