Violet V. KRAGE, Plaintiff
and Appellant,

v.

Leroy KRAGE, Defendant and Appellee.

No. 13554.

Supreme Court of South Dakota.

Considered on Briefs May 17, 1982.

Decided Feb. 9, 1983.

Daniel R. Fritz of Maloney, Kolker, Fritz, Hogan & Johnson, Aberdeen, for plaintiff and appellant.

Joe L. Maynes of Maynes, Tonner, Maynes & Tobin, Aberdeen, for defendant and appellee.

MORGAN, Justice.

This appeal arises from a decree of divorce that terminated a marriage of some twenty-eight years. Appellant, Violet Krage (wife), appeals from the trial court's division of property, refusal to grant alimony, and award of attorney fees in the decree. We affirm.

Wife instituted a suit for divorce against appellee, Leroy Krage (husband), on the grounds of extreme cruelty. Husband cross-claimed against wife on the same grounds. Five children had been born of the marriage but all were physically and mentally competent and over the age of twenty-one years at the time of the divorce. After hearing the evidence, the trial court found that each party had inflicted extreme mental cruelty upon the other and thus granted each a divorce. The balance of the findings of fact, conclusions of law and decree will be discussed where pertinent.

We first examine the allegations that the trial court inequitably divided the property and failed to award alimony. The trial court is granted broad discretion in making an equitable property division and granting alimony, but, must rest its decision upon several factors as they appear material to the facts and circumstances of each specific case. *Wallahan v. Wallahan,* 284 N.W.2d 21 (S.D.1979); *Lien v. Lien,* 278 N.W.2d 436 (S.D.1979); *Hanson v. Hanson,* 252 N.W.2d 907 (S.D.1977); SDCL 25–4–41, 44. Although the trial court is not bound by mathematical formula in making a property division, the factors considered in this division are: " '[t]he duration of the marriage, the value of the property of each, their ages, their health and competency to earn, the contribution of each to the accumulation of the property[.]' " *Hanson, supra* at 908. While SDCL 25–4–45.1 removed fault from consideration of a property division, fault is still considered in awarding alimony to either of the parties. *Hanks v. Hanks,* 296 N.W.2d 523 (S.D.1980). In addition to the factors considered in making a property division, an alimony award is also based upon the respective financial conditions of the parties after the property division and their standard of living. *Hanks, supra; Kittelson v. Kittelson,* 272 N.W.2d 86 (S.D.1978); *Guindon v. Guindon,* 256 N.W.2d 894 (S.D.1977). The trial court's award of alimony and the division of property are considered together on appeal to determine whether the trial court abused its discretion. *Wallahan, supra; Lien, supra.*

The trial court's findings set out, an exhaustive accounting of the property. For the sake of brevity, at this point, we note that the trial court found the fair market value of the marital assets consisting largely of ranch real estate and personal property to be $1,518,215.00, and the existing indebtedness to be $754,961.07. It further found that husband had contributed premarital assets and inheritance of a value of $48,450.00, and wife had contributed premarital assets of $1,000.00 value. After deducting the premarital assets, the court determined the net worth to be $713,803.93.

As to specific valuations, wife claims that the court undervalued the cattle and the land. We note that this court's review of the valuation is limited to determining whether there was an equitable division of the property except for assets overlooked or minimized by mortgages, which may or may not be legitimate liens against marital property. *Kittelson, supra.* Moreover, we do not require exactitude in valuation. The valuation need only be within a reasonable range. *Hanks, supra.* Wife's expert placed a valuation on the land of $1,247,500.00. Husband's expert valued it at $953,250.00. The trial court fixed the land valuation at $1,000,000.00. As to the livestock, wife's expert had valued it at $562,930.00 and husband's expert had valued it at $350,963.00. The trial court valued the livestock at $400,000.00. We find both these valuations by the trial court reasonably within the range of the evidence.

We then turn to the division of the property between wife and husband which amounted to approximately a forty/sixty split respectively. The trial court found that an in-kind distribution of property would destroy the ranch as an economic unit and create undue tax liability. As in *Hanson, supra,* the trial court here determined that the farm/ranch business was best kept as an economic unit. Husband received all of the real estate, buildings, equipment, machinery, motor vehicles, tools and livestock, and his personal effects. The trial court made this award subject to husband paying wife a cash award. Should the husband fail to obtain funds or financing to meet the payments, all the property, both real and personal, would be sold and the proceeds used to fulfill husband's obligation to wife. Wife received a $272,700.00 cash award, plus her original contribution of $1,000.00 to the marriage. This amount is payable over a nine-year period, with an immediate payment of $61,000.00 and the balance at ten percent interest per annum, amounting to a total principal and interest of $332,400.06. Wife also received a 1977 Cadillac valued at $7,500.00, plus $5,000.00 of home furnishings. The result of this forty/sixty split is that even though the indebtedness represented 49.73% of the parties' marital assets, the wife received everything free and clear of indebtedness.[1]

Based on the variances of husband's income, the restricted cash flow in a ranch operation, and the substantial property awarded wife, the trial court did not award alimony to wife. The trial court apparently had a pattern according to which it distributed the marital property. Similarly, we noted a pattern of distribution in *Wallahan* in which we stated, "[i]t is clear from the decree in this case that the trial court attempted to create a scheme of distribution which would take into account as fully as possible any immediate tax consequences without indulging in speculation as to possible tax liabilities which might theoretically arise." 284 N.W.2d at 26. We are hesitant to modify a judgment that follows a well-considered pattern of distribution.[2] Moreover, as to the trial court's balancing of the

1. In making the division, the trial court also considered a chose in action for destruction of property by fire. The trial court awarded any proceeds therefrom over and above the property insurance already recovered to the parties in the forty/sixty ratio to which we previously referred.

2. It is noteworthy that the author of *Wallahan v. Wallahan,* 284 N.W.2d 21 (S.D.1979), is the trial court judge in the present case.

factors to be considered in awarding alimony, we have examined the findings of fact and find that the trial court has considered all of these factors. Noting additionally that the trial court found both parties at fault, we cannot say from the record that the trial court was clearly erroneous in failing to award alimony.

■ Wife urges that the trial court erroneously considered conjectural, not necessary or probable, tax consequences of the property distribution. As this court said in *Wallahan*, 284 N.W.2d at 25, "the well-settled rule [is] that theoretical tax consequences on transactions which are not necessary or probable but merely conjectural need not be considered." *See Lien, supra.* Admittedly, the instant trial court considered the tax consequences of the property division. Here the trial court found:

> [T]he division of property in accordance with these findings of fact by leaving the ranch, livestock, machinery, and other property with the defendant having him assume the debts and paying plaintiff for her share over a nine-year period with all things considered will result in the least immediate adverse tax consequence to the parties, and the tax consequence to the parties was considered by the court in setting the interest rate as a deferred payment.

Due to the trial court's consideration of the tax consequence, the deferred payments award to wife results in wife having a tax liability on only the interest, not the principal. Clearly, the deferred-payment schedule makes it possible for husband to make the payments without selling the property. If the property is required to be sold because payments cannot be made, husband bears the capital gains tax liability. These considerations by the trial court do not appear to be conjectural. Instead, they are directly contingent upon wife's property award and its probable consequences. Since these are not conjectural tax consequences, we hold that the trial court did not err in considering the tax consequences of the property distribution.

Wife also complains that the trial court did not require husband to pay all of certain medical expenses in the amount of approximately $5,600.00 incurred by her in the interim between commencement of the action and the decree. The question was first raised after the trial court had issued its memorandum opinion. The trial court reopened the case to receive evidence regarding wife's heart attack, which had occasioned the expenses. Wife sought to require husband to pay the medical expenses in their entirety, relying on the interim order for support which had granted her $1,200.00 per month for paying ordinary living expenses, not to include hospitalization costs, medical costs, and other extraordinary expenses. The trial court denied wife's motion and determined that such expenses are liabilities, payable out of the marital property, and allocated the expenses between the parties with forty percent to wife and sixty percent to husband.

■ We cannot say that the trial court erred in not requiring husband to pay all the expenses under the interim support order. That order merely required payment of a specified amount for wife to use to meet ordinary expenses, specifically exempting the type of expenses in question here. Wife argues that the order implies that husband shall pay such extraordinary expenses, but the trial court apparently decided that liability for such expenses had been left open. In this regard we cannot say that the trial court erred.

■ Nor can we say that the trial court erred in not simply adding the expenses to the other $29,047.16 of miscellaneous debts imposed on husband as part of the $754,961.07 debt that he is required to pay. As we have previously noted, the entire property division appears to be a carefully conceived arrangement. Those expenses arose somewhat later and the trial court could well have conceived that the equitable disposition was to prorate them.

■ The final issue before us is whether wife's attorney fees were properly awarded. In *Lien,* we pointed out that "[a]fter determining what constitutes a reasonable fee in the case, the trial judge in a divorce case has to make the further decision of what

portion of the wife's attorney fees should be allowed as costs and thereby paid by the husband." 278 N.W.2d at 443 citing to SDCL 15–17–7; *Bollenbach v. Bollenbach,* 285 Minn. 418, 175 N.W.2d 148 (1970); *Hennen v. Hennen,* 53 Wis.2d 600, 193 N.W.2d 717 (1972). As further pointed out in *Lien,*

> We have repeatedly held that the allowance of attorneys' fees to a wife rests in the sound discretion of the trial court, and will not be interferred [sic] with by this court, unless it appears that there is error in the exercise thereof. Each case must rest on its own facts, and there is little to be gained by comparing the present fee with others which have previously been allowed.

278 N.W.2d at 443 (citations omitted). Here, the trial court found that wife had incurred attorney fees in the reasonable amount of $14,212.50 and costs of $7,600.00; that husband had also incurred substantial attorney fees. The trial court then determined that, considering all the evidence and the financial position of each of the parties, husband should pay wife $5,500.00 in addition to $1,000.00 previously paid to apply on attorney fees and costs. We do not find that the trial court erred in the exercise of its discretion.

We affirm the judgment below.

All the Justices concur.