**Marion Scott DUNCAN, Appellant,**

v.

**Ann L. DUNCAN, Appellee.**

Court of Appeals of Kentucky.

Feb. 13, 1987.

Charles W. Curry, Curry & Guthrie, Lexington, for appellant.

Natalie S. Wilson, Carol Davis Hendricks, Gess Mattingly Saunier & Atchison, Lexington, for appellee.

Before WILHOIT, COOPER and DUNN, JJ.

DUNN, Judge.

The Fayette Circuit Court made an equal division of the marital property in the parties' dissolution decree and in so doing valued the husband's interest in the Federal Civil Service Retirement pension fund at $25,183, the face value of his contributions to it, without discounting it to $9,100, the present discounted value of his contributions. He maintains that the trial court in so doing abused its discretion because he did not have access to the funds and appeals. We disagree with the husband and, hence, affirm.

The trial court made its equal distribution of the marital property based on net value. The wife was awarded the following with net values as indicated for a total of $63,059: household goods and silver in her possession $5,897, 1984 Renault automobile $500, her IRA $4,186, Ohio National Life Insurance policy $870, her savings account Bank of Lexington $168, her checking account $200, marital home $51,238. The husband was awarded the following with net values as indicated totaling $57,-757: Certificate of Deposit $15,000, household goods and silver in his possession $1,404, 1982 Mercury Marquis automobile $6,900, his IRA account $4,204, 1983 tax refund $757, Mass. Mutual Life policy $3,007, 1966 Fairlane automobile $1,100, antique book case of questionable value, his checking account $212, and the Federal Civil Service Retirement pension fund in question $25,183. In order to equalize the distribution between them on a 50/50 basis the trial court provided that the wife pay to the husband the sum of $2,656, resulting in each receiving marital property, the net value of which amounts to $60,403. It also provided for maintenance for the wife and support for their children. Again, none of this is in dispute except the treatment of the pension fund.

A brief description of the husband's pension plan is appropriate to this opinion. He is a federal bank examiner and has participated in the Federal Civil Service Retirement system for 15½ years. His rights in the pension plan can properly be described as vested, but not matured. As such it is marital property. *Foster v. Foster*, Ky. App., 589 S.W.2d 223 (1979). Pursuant to KRS 403.190 it is to be fairly disposed of

by the trial court. *Light v. Light,* Ky.App., 599 S.W.2d 476 (1980).

The nature of the plan is quite simple. The husband contributes 7% of his net salary to it. At any time his contribution can be determined by reference to his current pay voucher or by direct inquiry. Once it is vested there is no provision for forfeiture of his contributions to it. If he remains in the program to normal retirement age or disability, he will be entitled to continuous monthly payments, the total of which in no event will be less than the amount of his contributions. If he dies or terminates his employment before retirement or dies shortly after retirement age, he is entitled to have his contributions returned. On the other hand if he retires at the normal age or because of earlier disability, his retirement benefits extend for his lifetime and could, and in all probability would, substantially exceed the total value of his contributions. To speak practically, under the plan he could not withdraw the money he contributed without resigning or dying. In essence at the time of the dissolution his interest in the retirement plan was vested but had not matured to pay status. *Owens v. Owens,* Ky.App., 672 S.W.2d 67 (1984).

In a plan such as we have here there are basically two methods in which the non-employee spouse can be awarded his or her interest in the employee spouse's pension benefit. The first we call the "present value method" in which the trial court measures the present value interest in the pension and awards a percentage of that amount to the non-employee spouse in a lump sum, usually in the form of equivalent property. The employee spouse thus receives the entire pension right free of the non-employee's interest therein. Obviously this method requires the presence of other assets in an amount sufficiently significant both in amount and value so that other assets of an appreciable quality and quantity could be awarded to the employee spouse in addition to the pension fund to equalize division of the parties marital property. Obviously it would be an abuse of discretion only to award the employee spouse the unmatured pension fund rights and offset its value by awarding all other marital property to the non-employee spouse. The other method we call the "delayed division method", measures the formula for division at the time of the decree but delays the actual division until payments are received awarding to the respective parties the appropriate formula percentage of each pension payment if, as and when it is paid out. The "present value method" utilized by the trial court in the instant case provides advantages over the "delayed division method" especially where, as here, the anticipated date of retirement is far in the future and the parties both agree to it. The former spouses are thus spared further entanglement because the litigation is completed and the problems of enforcement are avoided.

In using it, however, the trial court is confronted with the complex problem of valuing the employee pension rights at the time of the decree. Obviously in order to make a fair valuation of the pension rights at that time it is necessary for the trial court to understand the nature of the pension fund and to be aware of the two methods of disposing of it fairly and equitably.

The trial court clearly understood the nature of the pension plan and was aware of the two methods when in overruling the husband's motion to discount the value of his contribution to it to a present value stated after considering the parties' respective memoranda:

... even though Mr. Duncan cannot now withdraw the money, or use it as collateral for a loan, and the only way he can get the money is to quit his job, the wife is entitled to and is awarded ½ of the money which he paid into the fund, rather than ½ of the present discounted value of the money in the fund. The cases of *Foster v. Foster,* 589 S.W.2d [223] 233, *Light v. Light,* 599 S.W.2d 476 [Ky.App.] and *Combs v. Combs,* 622 S.W.2d 679 [Ky.App.] were considered by the Court, but none of these cases hold that the marital funds placed into a retirement account must be discounted before a division thereof. The proof showed that the

husband was guaranteed to eventually receive at least the amount he contributed, $25,183; but it is very probable that he will receive an amount far greater than that.

If the husband were financially unable in this case to pay to the wife her portion of the pension fund, the Court would not have ordered the husband to pay to the wife her share of the fund, but instead would have computed what percentage of the retirement pay she would be entitled to receive whenever he retired and would have awarded that to the wife. But in this case the husband is able to pay to the wife her share of the marital funds which had been paid into the pension fund. Also, both parties wanted the wife to be paid her share of the fund now.

It is true that the cases mentioned by the trial court in the above statement and relied upon by the husband did not provide for discounting funds placed into a retirement account but they also did not prohibit discounting either. Our research causes us to agree with counsel for both parties that there are no Kentucky cases specifically in point.

The husband additionally relies on a Missouri case, *Alvino v. Alvino*, Mo.App., 659 S.W.2d 266 (1983), to support his argument for discount of the value of the husband's contributions because one of its factors parallels one of the factors of our case in that the employee would be required to quit his job in order to retrieve contributions to the plan. *Alvino* held that such forcible retirement not to be just and not to be economically sound. As a result it reversed and remanded for a just and equitable distribution of all marital assets keeping in mind the contingencies of the pension attached to the husband's employment, none of which are particularly pertinent to our case.

Husband's reliance on *Alvino* to support his "discount" argument is misplaced. The case simply does not require that an interest in a vested, *non-matured* retirement plan be discounted for valuation purposes. Nor does it so hold for a vested, *matured*

plan as was the status of the husband's plan in that case. At the time of trial he was eligible to retire and begin drawing a pension of $625.07 monthly, but he chose to continue to work.

We appreciate our husband's plight and resulting frustration and acknowledge both as so well expressed in *Johnson v. Johnson*, 131 Ariz. 38, 638 P.2d 705, 708–709, fn 6 (1981):

> ... the employee may feel cheated because he or she receives only an "expectancy" of receiving money in the future, while the non-employee spouse receives "real" assets such as ·home equity or stocks.

The award of marital assets in dissolution of marriage cases often includes property that is not readily convertible, transferable or liquid and is not necessarily unique to interest in pension plans. The reality of this necessity can't be denied. Likewise, here we can't deny the reality of the husband's right to no less than the amount of his contribution although he cannot presently exercise his right to regain them without terminating his employment or dying.

■■■ It is our considered opinion that from an equity point of view it would be not only unfair but it would also be unjust in making an equal distribution of other assets to a non-employee spouse based on value of the pension interest to value the husband's present retirement interest at an amount lower than the actual cash contribution made during the marriage with marital funds. It would perhaps be appropriate to discount a sum a non-employee spouse could receive in the future if such could be reasonably determined and we are making a present lump sum award based on that future sum. However, it is inappropriate to discount a present sum as if it were a future sum. To do so would be double discounting. *See Bloomer v. Bloomer*, 84 Wis.2d 124, 267 N.W.2d 235 (1978).

■■■ As did the court in *Bloomer*, we hasten to state that none of what we have said detracts from the fact that it is axiomatic that a trial court retains broad discre-

tion in valuing pension rights and dividing them between parties in a divorce proceeding, so long as it does not abuse its discretion in so doing in the sense that the evidence supports its findings and they thus are not clearly erroneous. CR 52.01; *Ghali v. Ghali*, Ky.App., 596 S.W.2d 31 (1980). *See also Light v. Light, supra.*

Here the trial court in determining the value and manner of dividing the pension interest carefully weighed the husband's argument and the proof regarding lack of access to the funds, the contingencies and terms and conditions of the plan, together with the distribution and value of all other marital assets and the parties' joint wish for present payment. We hold that the record bears out that in so doing its judgment is adequately supported by the evidence, statute, case law and logic and, consequently, supports its exercise of discretion as being a proper one.

The judgment of the Fayette Circuit Court is AFFIRMED.

All concur.