Susan J. KANTA, Plaintiff and Appellee,

v.

Gerald B. KANTA, Sr., Defendant and Appellant.

No. 17371.

Supreme Court of South Dakota.

Argued Sept. 10, 1991.

Decided Dec. 31, 1991.

Linda Lea M. Viken of Finch, Viken, Viken & Pechota, Rapid City, for plaintiff and appellee.

James L. Waggoner of Waggoner Law Office, Rapid City, for defendant and appellant.

AMUNDSON, Justice.

Gerald B. Kanta, Sr., appeals the judgment and decree of divorce entered October 18, 1990. We affirm in part, reverse in part and remand.

## FACTS

Susan J. Kanta (wife) and Gerald B. Kanta, Sr. (husband) were married October 24, 1970, at Kankakee, Illinois. Wife has a high school education and on-the-job training. Prior to the marriage, she had been employed for approximately two years and she remained so employed for six years.

Wife ceased working in 1976. Husband has an associate's degree, a B.A. degree, and an M.B.A. degree, and he has been employed with U.S. Postal Service throughout the course of the marriage.

During the marriage, wife turned down job promotions and moved often in order that husband could better advance his career. Husband contributed essentially all the income for his family, while wife engaged in the traditional role of housewife and mother.[1] Throughout the course of the marriage, the Kantas acquired substantial real estate and tangible marital property. Husband also secured retirement benefits as a result of his employment.[2]

The trial court found the breakdown of Kantas' marriage occurred largely because of an extramarital affair by husband. The trial court entered a judgment of divorce and awarded the tangible marital property approximately fifty-six percent to wife and forty-four percent to husband.

In addition, the trial court awarded wife compensation for "career opportunity costs" (also referred to as depreciated human capital) in the amount of $1,000 per month for twenty years. The trial court termed this award one-half property and one-half alimony, the alimony portion to terminate upon the death of either party or wife's remarriage. Wife was awarded custody, and child support was ordered. Wife was also awarded a portion of her attorney's fees. Additional details are discussed below in the analysis of each issue raised by husband's appeal.

## ISSUES

1. Whether trial court abused its discretion when it awarded wife $500 per month for twenty years for her "depreciated human capital" which the court considered to be property?

2. Whether the trial court abused its discretion when it refused to discount husband's retirement fund to present value?

3. Whether trial court abused its discretion when it made an unequal distribution of marital property based on fault?

4. Whether trial court abused its discretion when it awarded wife $500 per month for twenty years in alimony, terminable upon either party's death or wife's remarriage?

5. Whether trial court abused its discretion when it awarded $2,700 in attorney's fees to wife?

## ANALYSIS

*Standard of Review*

■ This court will not disturb a division of property unless it clearly appears the trial court abused its discretion. *Johnson v. Johnson*, 471 N.W.2d 156 (S.D.1991); *Fox v. Fox*, 467 N.W.2d 762 (S.D.1991); *Studt v. Studt*, 443 N.W.2d 639 (S.D.1989). "The term 'abuse of discretion' refers to a discretion exercised to an end or purpose not justified by, and clearly against, reason and evidence." *Gross v. Gross*, 355 N.W.2d 4, 7 (S.D.1984); *Rykhus v. Rykhus*, 319 N.W.2d 167 (S.D.1982); *Herndon v. Herndon*, 305 N.W.2d 917 (S.D.1981); *Davis v. Kressly*, 78 S.D. 637, 107 N.W.2d 5 (1961). The exercise of the trial court's discretion in dividing the property of divorcing parties is, however, restricted by SDCL 25–4–44[3] and SDCL 25–4–45.1.[4]

> When a divorce is granted, the courts may make an equitable division of the property belonging to either or both, whether the title to such property is in the name of the husband or the wife. In making such division of the property, the court shall have regard for equity and the circumstances of the parties.

1. Husband and wife have three minor children born of their marriage. The custody and support of these children are not issues in this appeal.

2. These retirement benefits were paid directly into the Civil Service Retirement Fund throughout the course of husband's employment. No interest is paid on these retirement benefits, and they are only accessible upon retirement, termination of employment, or when employee reaches fifty-five years of age.

3. SDCL 25–4–44 provides:

4. SDCL 25–4–45.1 provides, in pertinent part:

> Fault shall not be taken into account with regard to the awarding of property ... except as it may be relevant to the acquisition of property during the marriage[.]

### 1) Career Opportunity Costs

Husband argues that trial court's award for "career opportunity costs" is not recognized in South Dakota as property in a divorce action. Wife responds that South Dakota's case law implicitly recognizes the loss of economic opportunities in its alimony factors and property division factors.

■ This court has consistently recognized the principal factors the trial court is to consider when making an equitable division of the marital property as: (1) the duration of the marriage; (2) the value of the property; (3) the ages of the parties; (4) the health of the parties; (5) the parties' competency to earn a living; (6) the contribution of each party to the accumulation of the property; and (7) the income-producing capacity of the parties' assets. *Ryken v. Ryken*, 461 N.W.2d 122, 126 (S.D.1990); *Baltzer v. Baltzer*, 422 N.W.2d 584 (S.D. 1988); *Cooper v. Cooper*, 299 N.W.2d 798 (S.D.1980).

The trial court in the present case made a determination that wife was presently earning approximately $11,000 per year and that if she had pursued her career instead of ceasing employment in 1976, she would have been earning $23,000 per year.[5] The trial court then awarded wife the $12,000 difference in salaries, payable at $1,000 per month for twenty years.

■ Husband argues that a property award for career opportunity costs in effect creates a property interest in unemployment. He asserts it would be inconsistent to recognize a property interest in unemployment when we do not recognize a property interest in advanced educational degrees.

■ We have previously held that an educational degree earned during the course of a marriage is not property which is subject to division upon dissolution of marriage. *Saint–Pierre v. Saint–Pierre*, 357 N.W.2d 250 (S.D.1984); *Wehrkamp v. Wehrkamp*, 357 N.W.2d 264 (S.D.1984). In *Wehrkamp*, we found the trial court did

not abuse its discretion by refusing to consider enhanced earning capacity resulting from a degree husband earned in dental school during the marriage as a "marital asset" subject to property division. Justice Henderson stated: "The factors and variables involved in such a consideration are simply too speculative and could only act to turn the possibility of inequity on the one hand into a probability of such on the other." 357 N.W.2d at 266. We believe the same is true when considering career opportunity costs as divisible property. Career opportunity costs are speculative and open the door to the probability of inequity. The thrust of wife's position is to change the focus of an equitable division of property acquired during a marriage into a tort damage issue with the tort having been the husband's extramarital affair. This fault on the part of husband is appropriate for consideration in an alimony award but not in a property award.

Wife accurately states that other jurisdictions recognize career opportunity costs as a separate compensable item in divorce proceedings.[6] In these other jurisdictions, however, the statutory schemes are designed to allow compensation for career opportunity costs or maintenance. To date, South Dakota has not passed this type of legislation and, under the current statutory scheme, we do not find sufficient basis to recognize an award for career opportunity costs.

Wife further argues that this court has impliedly approved the career opportunity cost theory in our prior decisions. In the case of *Kelley v. Kirk*, 391 N.W.2d 652 (S.D.1986), we affirmed the trial court's award of restitutional and rehabilitation alimony based, in part, on the evidence presented in that case regarding depreciation in human capital. Next, in *Bradeen v. Bradeen*, 430 N.W.2d 87 (S.D.1988), this court stated that a trial court has the right to consider foregone opportunities for enhancement or improvement of professional

---

**5.** These calculations were based on an economic loss appraisal prepared by Dr. Ralph Brown.

**6.** *See In re Marriage of Williams,* 220 Mont. 232, 714 P.2d 548 (1986); *In re Marriage of Lundberg,* 107 Wis.2d 1, 318 N.W.2d 918 (1982).

or vocational skills when considering whether or not to award rehabilitation or reimbursement alimony. Neither of these decisions allows one to extrapolate a new property right for marital dissolution cases, nor should this holding be construed as diluting our previous decisions.

We hold the trial court abused its discretion in awarding compensation for career opportunity costs as part of a property division. Accordingly, we reverse that portion of the trial court's judgment.

## 2) Retirement Fund

■ Husband argues the trial court abused its discretion when it refused to discount his retirement fund to present value, since it accumulates no interest and is not immediately available to him. Both parties presented minimal opinion evidence on the valuation of husband's retirement plan.[7] Husband presented a letter from an Actuarial Service which placed a present value on his retirement account of less than $10,000.[8]

Wife presented testimony of economist Dr. Ralph Brown that husband's proffered valuation did not account for any growth factor on the account. Dr. Brown testified that it would not be appropriate to present value the account since there was no way of knowing what the value of it would be upon husband's retirement, approximately seventeen years away. Were husband to cease his employment with the Postal Service *today*, he would receive $40,492 from his retirement account; thus, the trial court, in essence, placed a present value on the account. This figure was the one selected by the trial court and the entire amount was awarded husband.

Husband's retirement account, based on the evidence, is a defined contribution plan where husband contributes a percentage of his salary to the plan. The amount of his contributions can easily be determined at any time. If the husband remains in his present employment, as he has for the last twenty-plus years, his retirement benefits would more than likely exceed his contributions. There is no question that the funds cannot be withdrawn unless he terminates his employment or dies.

Courts in other jurisdictions have held when evaluating this type of asset in a marital dissolution case, it need not be discounted to present-day value. In *Duncan v. Duncan*, 724 S.W.2d 231 (Ky.App.1987), the Kentucky Court of Appeals considered a husband's contributions to the Federal Civil Service Retirement System. The contribution scheme in *Duncan* required husband to contribute seven percent of his net salary, and after the fund vested, he could not withdraw the money without resigning or dying. *Id.* at 233. The *Duncan* court considered various methods for awarding the interest in the pension fund, and awarded husband the entire present value of his pension fund, compensating wife with other property of equal value.[9] *Id.*

The *Duncan* court concluded the appropriate valuation of husband's interest in his pension fund was the face value of his contributions to it, without discounting it to present value, even though his interest at the time of dissolution had not matured to pay status. *Id.* at 233–34. The court stated: "[I]t would be unjust to value the husband's present retirement interest at an amount lower than the actual cash contribution made during the marriage with marital funds." *Id.* at 234.

Similarly, in *Bettinger v. Bettinger*, 396 S.E.2d 709 (W.Va.1990), the West Virginia

---

7. The record in this case discloses that neither party had their expert review the husband's plan document. Since the plan document governs this type of an employee benefit, it would certainly seem logical and prudent practice to have an expert carefully analyze the document when preparing an opinion on the value of benefits provided by the plan when the value of same is in issue.

8. There were several calculations based on varying lump sums, interest rates and time periods for values ranging between $3,487 and $10,025.

9. We previously recommended a similar course of action in *Stemper v. Stemper*, 403 N.W.2d 405 (S.D.1987). There we said: "May we suggest to the trial courts that when feasible they should consider awarding the employee all pension rights and compensate the spouse with other property of equal value." *Id.* at 408.

Supreme Court of Appeals stated that, "the valuation for equitable distribution purposes of a vested defined contribution plan is the present actual value of the contributions made and the accumulated earnings thereon." *Id.* at 718. The *Bettinger* court, along with many other jurisdictions, concluded there was no need to discount the value of the contributions made since it already represented actual present value. *Id.* *See also Johnson v. Johnson,* 131 Ariz. 38, 638 P.2d 705 (1981); *Berry v. Board of Retirement, Co. of L.A. Retire. Ass'n,* 23 Cal.App.3d 757, 100 Cal.Rptr. 549 (1972); *Laffitte v. Laffitte,* 232 So.2d 92 (La.App.1970); *Richardson and Richardson,* 307 Or. 370, 769 P.2d 179 (1989); *Bloomer v. Bloomer,* 84 Wis.2d 124, 267 N.W.2d 235 (1978).

In the present case, husband contributed $40,492 to his retirement fund throughout the course of the marriage. To value his present retirement interest at an amount lower than his actual cash contribution made during the marriage with marital funds would be unjust. *Duncan, supra.* Since husband's retirement account will continue to grow through his regular contributions, we find the rationale of the above cases to be convincing, and hold the trial court did not err in its valuation of this particular asset based on the record. The court's valuation of this asset was within the range of figures presented at trial and was supported by the record. *Johnson,* 471 N.W.2d at 162; *Nelson v. Nelson,* 454 N.W.2d 533, 537 (S.D.1990). As such, it is affirmed.

3) Unequal Distribution of Property

■ SDCL 25–4–45.1 allows fault to be considered in property division only when it is relevant to the acquisition of property during the marriage. Our review is limited to a determination of whether there was an equitable property division. *Temple v. Temple,* 365 N.W.2d 561, 565 (S.D.1985) (citing *Krage v. Krage,* 329 N.W.2d 878 (S.D.1983)).

The trial court awarded wife various personal property with a total value of $24,-400.00, proceeds from sale of a house in the amount of $39,888.00, a savings account worth $5,783.93, one-half of their Sears stock, her IRA in the amount of $1,515.54, and savings bonds valued at $1,700.00.

Husband was awarded various personal property with a total value of $18,400.00, the Schwab investment fund worth $6,817.00, one-half of their Sears stock, his Thrift Savings Plan valued at $4,461.80, and his entire retirement account in the amount of $40,492.06. The parties are to share in the net proceeds from a sale of their real property in Illinois when it sells. This division reflects approximately fifty-six percent of the property going to wife, forty-four percent to husband.

The trial court in its conclusions of law stated it was dividing the property inequitably due to the relative fault of the parties. There is no finding that fault in any way affected acquisition of marital property. Accordingly, fault was not a proper factor for consideration in this property division.

■ Husband also raises the argument that the trial court erred in its valuations of certain inherited and gifted items of property and their inclusion in the marital estate.[10] It is within the trial court's discretion whether to consider gifts or inheritance as part of the property to be divided. *Balvin v. Balvin,* 301 N.W.2d 678 (S.D. 1981); *Buseman v. Buseman,* 299 N.W.2d 807 (S.D.1980). After full disclosure and consideration of the assets, the trial court determined the items were marital property. The trial court did not abuse its discretion in its valuations of these items or their inclusion in the marital estate.

For the reasons stated herein, we reverse and remand the property division so that an equitable division may be made based on a consideration of the appropriate factors.

4) Alimony

■ Husband also challenges the trial court's decision to award wife $500 per month for twenty years in alimony. The

---

10. Specifically, these items were a collection of guns and heirlooms from his family.

trial court's discretion in awarding alimony is bound by SDCL 25–4–41.[11]

■ Factors to be considered in awarding alimony are (1) the length of the marriage, (2) the parties' respective ages and health, (3) the earning capacity of each party, (4) the financial condition of each party after the property division, (5) the parties' station in life or social standing, and (6) the relative fault in the termination of the marriage. *Studt*, 443 N.W.2d at 643; *Bradeen*, 430 N.W.2d at 88.

The trial court considered the relevant factors in making its alimony determination. The court found both parties were in relatively good health, and were both presently working. It found husband's gross monthly income to be $5,441.65 and wife's to be $910.50. It found the parties were accustomed to a comfortable standard of living, and found husband capable of providing support to wife. It also found wife to be in need of such support.

Wife was awarded $500 per month for twenty years, terminable upon either party's death or wife's remarriage. We cannot say that this award was so excessive in light of the trial court's findings as to evidence an abuse of discretion. However, the amount of alimony must be reconsidered in light of our holding remanding the property division for reconsideration. *Johnson, supra.*

5) Attorney Fees

■ The trial court's award of attorney fees is a matter which lies within its discretion. *Fox*, 467 N.W.2d at 768; SDCL 15–17–7. The court considered the necessary factors as set out in *Lien v. Lien*, 278 N.W.2d 436, 436 (S.D.1979). The court found the fee was reasonable and that husband had increased wife's attorney fees by his actions. The trial court's award of attorney fees is affirmed.

■ Both parties filed a motion for appellate attorney's fees. Such motion was accompanied by an itemized statement of costs incurred and legal services rendered as required by *Malcolm v. Malcolm*, 365 N.W.2d 863 (S.D.1985). In deciding whether a party is entitled to appellate attorney fees, we consider the property owned by each party, the relative incomes, the liquidity of the assets and whether either party unreasonably increased the time spent on the case. *Studt*, 443 N.W.2d at 644 (citation omitted). Considering these factors in conjunction with this case, we have determined that each party shall be responsible for their own appellate attorney fees.

The judgment of the trial court is affirmed in part, reversed in part, and remanded for proceedings consistent with this opinion.

MILLER, C.J., and WUEST and SABERS, JJ., concur.

HENDERSON, J., concurs in part, concurs in result in part, and dissents in part.

HENDERSON, Justice (concurring in part, concurring in result in part, and dissenting in part).

I.

Alimony and property division must be considered together. *Krage v. Krage*, 329 N.W.2d 878 (S.D.1983). Majority opinion reflects "the amount of alimony must be reconsidered in light of our holding remanding the property division for reconsideration." I agree. Therefore, said citation and the majority's above expression eviscerates (or should) this inconsistent statement on alimony: "We cannot say that this award (of $500 per month alimony for twenty years) was so excessive in light of the trial court's findings as to evidence an abuse of discretion." Wife has excellent health and is fully employable. These two factors, plus the holding of *Krage*, should be considered by the trial court in its new

11. SDCL 25–4–41 provides:
Where a divorce is granted, the court may compel one party to make such suitable allowance to the other party for support during the life of that other party or for a shorter period, as the court may deem just, having regard to the circumstances of the parties represented; and the court may from time to time modify its orders in these respects.

decision. Therefore, I concur in result only to the alimony dissertation believing it has inherent conflict. Considering the holding in *Krage*, it is wrong to try to "lock in" the $500.00 per month alimony award.

## II.

In concurring on the "lost career opportunity," this award would have impressed upon ex-husband an obligation to pay $120,000.00 in additional payments, as payments would be $1,000.00 per month for 20 years (in addition to the $500.00 monthly alimony). Kanta is a postal employee, not Johnny Carson or Donald Trump. Such a 20-year award is not based upon *any* standards heretofore expressed by this Court. The ex-Mrs. Kanta is attempting to impose a tort theory (for damages) in a divorce case. There are seven considerations, explicitly set forth by this Court in several decisions, which are a blueprint for property division. Example: *Baltzer v. Baltzer*, 422 N.W.2d 584 (S.D.1988). Linda Lea M. Viken, counsel for Susan Kanta, co-authored an article with a Dr. Brown captioned *Recognition of Homemaker Career Opportunity Costs and Marital Dissolution Cases*, 35 S.D.L.Rev. 41 (1989). Though these two individuals wrote the article and then implanted its theory, in this case, it is not a recognized right. It contravenes settled law in this state. Brown, an author, was then the star witness on an economic theory. Result of all this: big divorce case in the Supreme Court of our state with a disproportionate division of a mailman's lifetime savings and property. I have noted, in this record, that substantial evidence exists reflecting that Susan Kanta not only turned down promotions but chose, also, not to seek any additional education. She was encouraged to educationally improve herself but said no. The mailman, while working very hard, continued to advance himself with additional education. Ultimately, he attained an important supervisory position.*

## III.

Concerning the retirement fund award of a present actual value of contributions made, I agree with the rationale of the 1990 West Virginia decision of *Bettinger*, cited in the majority opinion.

## IV.

I strongly dissent to an award of attorney's fees at the trial court level. Appellee and her counsel made no record below nor offered any testimony with respect thereto. Furthermore, Susan Kanta was awarded $50,000 in cash or assets convertible to cash. She has liquidity to defray her own attorney's fees. Also a factor against an award of attorney's fees to her counsel is the calculated, orchestrated, and inventive attempt to circumvent the settled law of this state. Counsel and her client sought to create a tort within a divorce action. As per *Lien v. Lien*, 278 N.W.2d 436 (S.D. 1979) and *Prentice v. Prentice*, 322 N.W.2d 880 (S.D.1982), the appellee and her counsel increased, unreasonably, the time spent on this case and created a burdensome complexity of the issues. Counsel and her client should not be rewarded for creating a test tube case—orchestrated entirely by counsel and her expert, Brown. Therefore, I dissent to Justice Amundson's writing in this regard. I would award $2,743.26 appellate attorney's fees to the principal winning party in this action, the appellant. Susan Kanta has the liquidity to defray these appellate fees and she has essentially lost this entire appeal, with the exception of the retirement issue. Appellant's record on appellate attorney's fees is properly documented under *Malcolm*.

---

* One of God's greatest gifts to man is work. It does wonders for your pocketbook and soul. It invigorates your mind. It is a wonderful ethic and Susan Kanta should try it.